## Armitage's Estate.

*Trusts and trustees—Investments—Payment of principal to life tenant—Surcharge.*

The estate of a deceased trustee cannot be surcharged because of investments made in western mortgages which subsequently became unproductive, and because of payments made out of principal for the support of the widow and children of the creator of the trust, where it appears that all of the parties interested when of full age, and of absolute competency, agreed in writing to all the payments of principal, to the investments which had been made by the deceased trustee, and to the receipt by the substituted trustee of the investments that were left.

Argued April 18, 1900.  Appeal, No. 86, Jan. T., 1900, by Hale M. Armitage, from decree of O. C. Huntingdon Co., Dec. T., 1899, Nos. 284, 285, overruling exceptions to auditor's report, in the estate of John Armitage.  Before GREEN, C. J., McCOLLUM, DEAN, BROWN and MESTREZAT, JJ.  Affirmed.

Exceptions to auditor's report.

The facts appear by the report of J. F. Schock, Esq., auditor, which was as follows:

John Armitage made his will, dated November 17, 1856, and died before the 2d day of May, 1857, his said will having been proven on that day. He left to survive him his wife, M. R. Armitage, and five children, G. B. Armitage, lately deceased, Hale M. Armitage, the exceptant, Elizabeth G. Armitage, Sarah V. Armitage, and Margaret F. Armitage; all of which said children were minors and quite young at the date of said will. John Armitage at the date of his will, and to the time of his decease, resided with his said wife and children in the home at the corner of Fourth and Washington streets in the borough of Huntingdon. By his will he directed that all moneys due his estate at his death should be collected and all his real estate, excepting the above mentioned home property should be sold, and the fund thus raised safely invested, and "the interest on the whole amount so realized shall be paid annually to my wife, Margaret R., during her life for the support of herself and the support and education of my children." He also devised to her for life the home property. The tenor of said will is, that his wife should have the use of said home property during life, or, in case of her death before the youngest child became twenty-one years old, that the children should live together there until that time; that during her life she should also have the net income of all his other estate for her support and the support of the children until they should be twenty-one years of age, and for their education. For educational purposes, the executor is authorized to apply part of the principal if necessary; but there is no authority given to use any of the principal for the support of the wife or the children. At the death of the wife, the entire estate goes to the children, in fee. James Gwin was appointed executor and trustee. He was succeeded by S. T. Brown, Esq., G. B. Armitage and J. R. Simpson, Esq., the present trustee and administrator. On May 27, 1868, as shown by Mr. Brown's first account, the estate consisted of $27,635.32 in personal securities, the land in Sioux district, Iowa, Adair county, Iowa, and the home property in Huntingdon. The account of the present trustee shows only $5,334.24, in personalty. The burden of the first, second, third, eleventh, fourteenth and sixteenth exceptions, above recited, briefly stated, is that the estate of G. B. Armitage, or his bondsmen, should be surcharged with the deficiency, for the following reasons, viz:

1. Because Mr. Armitage removed the personal assets of the estate from the domicil of the testator and invested them in other states and beyond the jurisdiction of the courts having control over his accounts. This act being unauthorized by the said courts, his estate is liable to surcharge for the amount so removed to other states without regard to the question whether it was thereby lost or not; that as a consequence, his estate is not entitled to credit for any expenses, taxes, costs or insurances paid by him for or on account of said foreign investments.

2. Because he paid a large amount of the principal of the estate to the life tenant which has been consumed in the support of herself and the said children, such payments not having been authorized by said will.

In support of this contention or claim, it is shown by the schedule attached to the account filed, that a considerable part of the estate now consists of properties in Colorado, Kansas and Minnesota, on which loans had been made by the said G. B. Armitage as trustee, and the borrowers having defaulted, the said properties were bought in by the trustee at foreclosure sales, or taken at forced settlements, in efforts to collect said loans; and that said properties are now not only unproductive but expensive, and are worth less than they cost the estate. It is further shown by the present account, and by the former accounts filed by said trustee, that he has paid out to the life tenant of what he had received as principal, to the extent of the following sums:

Account 126 of 1874:

| | | |
|---|---:|---:|
| Interest paid, . . . . . | $8,646.01 | |
| " received, . . . . . | 6,227.19 | |
| | | $2,418.82 |
| Account No. 189 of 1884: | | |
| Interest paid, . . . . . | 21,172.82 | |
| " received, . . . . . | 13,969.12 | |
| | | 7,203.70 |
| Account No. 298 of 1892: | | |
| Interest paid, . . . . . | 13,912.65 | |
| " received, . . . . . | 10,463.38 | |
| | | 3,449.27 |
| Amount carried forward | | $13,071.79 |

|  |  |  |
|---|---|---|
| Amount brought forward |  | $13,071.79 |

Account No. 218 of 1899:

| Interest paid, . . . . . | 7,036.54 |  |
| " received, . . . . . | 3,385.83 |  |
|  | | 3,650.71 |

Total principal paid to life tenant by
G. B. Armitage, admr. c. t. a. and
trustee . . . . .                                    $16,722.50

This disbursement of principal as interest has all been made since March 1, 1871. There was but little, if any of it, so far as the accounts show, applied to the education of the children. The evidence fails to show that the said trustee had any authority for so converting this part of the principal into income, either under the testator's will, or a decree of any court, or an agreement of the parties in interest. This apparent maladministration of said estate in removing a considerable part of it to foreign jurisdictions where it has become largely unproductive, and endangered, and in paying $16,722.50 of principal to the life tenants as interest, without authority shown, is so great that, in an ordinary case, where the trustee represented minors, or other persons non sui juris, surcharge of the trustee would undoubtedly follow. But in this case, the following further facts have been shown, viz: that all of the above stated accounts, excepting only the account No. 218 of 1899 (which is the one to which the pending exceptions were filed), were confirmed by the proper court, without objection in 1892 and previous thereto, and have not been appealed from, or reviewed. All disbursements of principal as interest, for which credit was taken in said accounts, have therefore been confirmed by the court. The auditor has no power to review this action by the court. Hence, these accounts are conclusive on the exceptant as to everything that is contained in them. See Rhoads's Appeal, 39 Pa. 186, and Frost and Loomis's Appeal, 105 Pa. 258, and many other cases.

In addition to this, both as to the removal of the assets, and the conversion of principal into income paid to the life tenant, we have the further facts: That the widow, M. R. Armitage, is still living and is sui juris; and the above named children of John Armitage are all, excepting G. B. Armitage, the said trustee, still living and are sui juris. The father having died

in 1857, none of said children can be less than forty-one years of age.  The said widow and children were under the will, the absolute owners of the estate of John Armitage, and after they all attained their majorities, could dispose of it by agreement as they pleased.  The will now merely suspends the coming into possession of the children until the death of the widow.  By agreement they could have terminated the trust and divided the estate at any time since the youngest child came of age.  They could, therefore, at any time within twenty years past, consent that the trustee should remove the personal estate to a foreign jurisdiction where he could invest it for their benefit at a higher rate of interest, for the purpose of increasing the net income.  If he did this with their knowledge, and they, through their mother, received the increased income, they are bound and cannot now repudiate his acts.  The evidence is that they did all, including the exceptant, know it had been done.  The mother testifies : " We knew, the family including Hale knew, that Barton was keeping the estate invested in the west."  " We got a better rate of interest in the west; and that was the reason the money was invested there."  The exceptant does not deny that he knew it.  Before J. R. Simpson, Esq., the present trustee, accepted the trust, the said widow and surviving children, including the exceptant, executed and delivered a declaration in writing under date of January 8, 1898, in which occurs the following statement: " And we being satisfied that the investments made by said G. Barton Armitage were made in good faith and having in view the best interests of said estate, we do hereby direct the said J. R. Simpson to receive said securities without objection whether or not they be in accordance with the will of the said John Armitage and with the laws of Pennsylvania, relating to investments by trustees," etc.

The said widow and children could also, at any time within twenty years past, consent that the trustee should pay the life tenant who has been, and is, the manager of their financial affairs, any part, or all of the principal for their common benefit since they have been, and are all living together as one family. If the principal or any part of it was so used without the knowledge or consent of the exceptant, as appears to have actually been done, he is, and has been, competent to ratify the acts of

the trustee in paying it over to the life tenant to be so used. The evidence does not show that the exceptant had knowledge that the principal was being used, or that he ever ratified its use by the life tenant, until pending this audit, on October 25, 1899, he with the other surviving children, executed and delivered the agreement of which a copy is hereto attached containing the following: "And we hereby ratify payments out of the principal of the said estate heretofore made to the said M. R. Armitage for the purposes aforesaid both by the said J. R. Simpson, administrator c. t. a., and by G. B. Armitage, administrator c. t. a., of John Armitage, his predecessor in said trust."

The auditor, therefore, finds that by exceptant's knowledge of the western investments, his participation in the benefit at the first derived therefrom, but more particularly by his execution of the above recited agreements of ratification, both as to them and as to the use of $16,722.50 of the principal as interest, he is now estopped from insisting further on exceptions numbers one, two, three, eleven, fourteen and sixteen, and they are accordingly overruled. It is only fair to the exceptant, however, to say that the auditor regards the paper of October 25, 1899, as a substantial withdrawal, for family considerations perhaps, of any exception to the payment of principal as interest, and an acquiescence in the overruling of an exception on this point that might otherwise have been sustained, at least so far as the pending account is concerned.

As to the fourth exception : The account No. 298, of 1892, having been confirmed absolutely, the balance shown by it to be due the accountant is res adjudicata. Hence, the auditor cannot disallow a credit for it in the pending account. Besides, the above mentioned ratifications of the acts of the trustees probably remove all legal objections that otherwise existed to said balance. This exception is, therefore, overruled.

As to exceptions five, six, seven, eight, nine and ten: The exceptant having had knowledge of the investment of the principal of the estate, by the trustee, in other states, and having participated in the benefit derived from these investments when first made, and having withdrawn all objections to the securities held by the trustee, among which are the properties, or some of them, on which the taxes, insurance, etc., in these exceptions objected to, were paid, he cannot now repudiate the

legitimate result of the mistaken judgment of the trustee, exercised as the acceptant himself declares, "in good faith and having in view the best interest of the estate." Having had knowledge of these investments and being satisfied with them, Mrs. Armitage swears "Hale was satisfied." When they were productive, he is to be held as having, along with the other cestui que trusts, all of age and sui juris, taken the risk of the final outcome of said investments and now to be bound by such outcome. These exceptions are, therefore, overruled.

As to exceptions twelve and thirteen: Mrs. M. R. Armitage testified, when shown lists of the payments making in the aggregate the amounts of the items, $729 and $675.25, mentioned in these exceptions, "I received the money." There is no evidence to the contrary. If these items objected to were interest or income, she was entitled to them under her husband's will. If they were principal, she was not entitled to receive them; but as the exceptant has since ratified all "payments out of the principal of the said estate heretofore made to the said M. R. Armitage by G. B. Armitage, administrator, c. t. a.," these exceptions must now be considered as withdrawn, or if not withdrawn, then overruled. They are overruled.

*Errors assigned* were in overruling exceptions to adjudication.

*H. H. Waite* and *Harry W. Petrikin* for appellant.

*Warren B. Simpson* for appellees.

PER CURIAM, April 30, 1900:

The reasons given by the auditor in his report for dismissing the exceptions to the accounts filed, are so entirely satisfactory that we sustain them as they are there expressed. There is no doubt whatever that all the parties interested agreed in writing to all the payments of principal, to the removal of the securities, to the investments which were made by G. Barton Armitage, and to the receipt by Simpson as administrator c. t. a. of those that were left. These parties were all competent to make the agreements referred to, and as the principal of the estate had been encroached upon and used for their own, and their mother's support, it was eminently right and proper to do just as they

did in the execution of the papers in question.   The assignments of error are dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.