## Stephen's Estate.

Argued October 16, 1935. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

98

*W. Denning Stewart,* with him *J. P. Fife* and *John H. Lauer,* for appellant.

*James S. Crawford,* of *Patterson, Crawford, Arensberg & Dunn,* for appellee.

OPINION BY MR. JUSTICE LINN, November 25, 1935:

All the exceptions to the adjudication were withdrawn at the hearing before the court in banc except that of the widow who seeks to surcharge the accountant with a large sum representing shrinkage in market value of stocks and bonds left by decedent. The exception was dismissed and the widow appeals.

We agree with the learned court below that the manner of handling this estate merits disapproval, but that, in the circumstances, as the court held, the widow "cannot now be heard to complain."

Charles L. Stephen died, testate, June 13, 1930. Letters testamentary were granted July 30, 1930, to Dollar Savings & Trust Company, executor. Subsequently that company was consolidated with Peoples-Pittsburgh Trust Company which succeeded to the executorship. The inventory showed assets of $111,403.92. Decedent was indebted to Dollar Savings & Trust Company in the sum of $16,000 secured by collateral valued at his death at $26,146.50; he was also indebted to Allegheny Trust Company for $15,700 secured by collateral valued at $21,673.68. By his will he devised his real estate to

his widow, provided trusts of $8,000 each for three children, the income to go to the appellant until the beneficiaries reached 21, made charitable gifts (which failed) and gave the residue to his widow.

In March, 1931, decedent's interest in a partnership was sold for $21,556.17, slightly more than the inventoried value; out of these proceeds the debt to the Allegheny Trust Company was paid on July 1, 1931.

The administration of the estate was prolonged until the account was filed August 31, 1934. From the date of decedent's death the market prices of the stocks and bonds declined. Instead of promptly converting the securities, paying the collateral notes and making distribution as the law contemplates, the accountant and the widow awaited a favorable turn in the market. The accountant had nothing to gain by this delay, as there was more than sufficient personal property to pay the debts and the legacies to the children. Accountant alleged that the reason for its failure to convert was the delivery of the following paper on November 20, 1930, signed by Mrs. Stephen and addressed to it: "I request you to not sell any securities held by you at this time in the estate of Charles L. Stephen until I ask you to do so."

The securities were sold in 1934, at various times between March 7th and August 17th. Appellant testified that in February, 1934, she "told them not to sell." On behalf of the accountant, a witness testified that, at the February meeting referred to, she was informed that, as the assets were sufficient to pay the legacies, the accountant would not hold them longer "unless she put up security to protect any further depreciation below the amount of the legacies."

There is contradiction in the evidence as to whether she had requested that they be sold in 1931; the auditing judge found that she had not done so. On this subject he said: "Mr. Lauer, who was attorney for the widow, and, in the early stages of the administration, at least, also counsel for the executor, advised the executor that the

securities should be sold promptly unless the widow would in writing request otherwise.  On November 20, 1930, after talking over the situation with the trust officer and expressing her wish that the securities be held in the hope of a better market, she executed a written request that the executor should not sell any of the securities until such times as she would direct.  In her examination in chief Mrs. Stephen testified that in April, 1931, she told Mr. Bruggeman, at that time secretary and treasurer of the Dollar Savings and Trust Company, in the presence of Mr. Garroway, the trust officer, that she had decided to sell the stocks.  In this she must be mistaken, for she never talked with Mr. Bruggeman about the disposition of the stock except once, and that was sometime in 1932.  When asked repeatedly if she had requested after 1931 that they be sold she admitted that she had not.  Both Bruggeman and Garroway testified that no such request was made at the interview in 1932, or on any other day.  In the conference on February 26, 1934, between George F. Taylor, Esquire, acting for the bank, and Mrs. Stephen and Mr. Lauer, it was stated by either Lauer or Mrs. Stephen that the request for the sale was made on November 21, 1932, to Mr. Bruggeman, and not to Mr. Garroway.  In view of the uncertainty of the testimony of Mrs. Stephen and the positiveness of that of Garroway, Bruggeman, and Taylor, we must find that no such request was ever made.

"Mr. Lauer testified that in April, 1931, in a conversation by phone he advised Garroway that the securities should be sold.  This is denied by Garroway, but, even if it be true, it was not the request of Mrs. Stephen, who had asked for the delay.  He was counsel for the executor, at least he was considered as such.  It was he who advised the executor to sell the stocks in the fall of 1930 unless requested in writing by Mrs. Stephen not to do so.  If he considered it important that the request not to sell should be in writing, it would seem only reasonable that a direction to sell should have the same formal-

ity. If Lauer, representing the widow, was of the opinion that it would be for the best interest to sell, he should have, upon the refusal of the executor to do so, taken steps to enforce compliance."

As the errors assigned relate to the final decree we must assume the facts to be as found by the learned court below and only inquire whether the findings support the decree (Huff's Est., 299 Pa. 200, 149 A. 179), and the law has been correctly applied.

The accountant relies on the written request of appellant to justify its administration of the assets. As the amount for distribution is more than sufficient to pay the children's legacies, the dispute is between the accountant and the appellant only. The accountant contends that, as appellant was familiar with her husband's affairs, was represented by counsel (who was not present when the paper was signed) and makes no claim that she was fraudulently imposed on, her participation in the transaction must be given the effect intended by instrument executed.

The appellant contends that section 46a of the Fiduciary Act of June 7, 1917, P. L. 447, 20 P. S., section 831, imposes on the executor the duty to file an account at the expiration of six months from the grant of letters, and disqualifies the accountant from complying with her request. The act was passed for the benefit of creditors and beneficiaries and is subject to their expressed desires: Cf. Keller's Est., 224 Pa. 523, 73 A. 926; Henry's Est., 198 Pa. 382, 48 A. 274; Walworth v. Abel, 52 Pa. 370. The accountant may not ignore the statutory duty to file the account (Johnston's Est., 9 W. & S. 107; Constable's Est., 299 Pa. 509, 149 A. 743), but failure to perform the duty produces liability only for loss resulting from failure to account, as required. Appellant's request for surcharge cannot be granted unless it appear that some damage resulted from the delay. Appellant, who alone is interested in this controversy, had in her possession from the time of the testator's death a list of

the assets involved; she did not cite the appellee to account as she had a right to do; on the contrary, she requested the retention of the nonlegal securities. In such circumstances it is evident that the failure to file an account did not of itself produce any injury of which appellant can complain and that she may not invoke the terms of the act to prevent the accountant from relying on her written request not to sell the securities until she requested the sale.

It is true that ordinarily an executor should, as expeditiously as possible, convert his decedent's personal property in possession, but this rule varies with circumstances: see Stewart's App., 110 Pa. 410, 6 A. 321; Dauler's Est., 247 Pa. 356, 93 A. 511; Borell's Est., 256 Pa. 523, 100 A. 953. And where the sole beneficiary requests in writing that a conversion of property should be postponed until further notice by her, the executor is legally justified in acceding to her wishes. "A competent beneficiary who with full knowledge of the facts and of his rights expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety: Armitage's Est., 195 Pa. 582, 46 A. 117; Detre's Est., 273 Pa. 341, 117 A. 54; Brown's Est., 287 Pa. 499, 135 A. 112"; Macfarlane's Est., 317 Pa. 377, 177 A. 12. See also Restatement, Trusts, section 216; Curran's Est., 312 Pa. 416, 167 A. 597.

The appellant also excepts to the failure to surcharge the executor with interest on the $8,000 estates left to the children. The will provided that the interest from these funds, which were directed to be invested in certain bonds, should be paid to the widow until the children reached their majority. But as the entire estate remained invested in the securities received by the executor and as it was impossible to make other investments until these were converted, the appellant is again bound by the effect of her request. For the same reason the

executor may not be surcharged with any of the interest paid on decedent's notes.

Decree affirmed, costs to be paid out of the fund for distribution.