## Lewis' Estate

Before Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* for exceptants.

*Clarence E. Hall,* of *Orr, Hall & Williams,* contra.

STEARNE, J., October 31, 1941.—A surcharge has been imposed by an auditing judge upon testamentary

trustees, because of undue retention of nonlegal securities, to which the trustees except.

Upon the account of the executors in 1920, 30 shares of stock of a trust company were awarded to two named individual testamentary trustees. In 1922, upon the death of one of the trustees, an account was filed and audited. The account revealed the inclusion of the stock as part of the balance. Notice was given of the audit to the life tenant and remaindermen. The adjudication awarded the balance, as thus composed, to the surviving trustee and to the present corporate trustee, which was appointed cotrustee to succeed the former deceased trustee. The cotrustees continued to manage the trust until 1929 when a second account was filed, occasioned by the death of the individual trustee. Among the assets the stock in question was still retained and included. Through merger and the purchase of a fractional share, the original 30 shares were exchanged for 168 shares of the stock of the present corporate cofiduciary. Retention of the stock was fully disclosed in the account, and copies of the account were served upon the life tenant and all remaindermen. On January 13, 1930, an adjudication awarded the balance shown by the account, including the 168 shares of stock, to the surviving corporate fiduciary, and to an individual appointed as substituted cotrustee, in the place of the deceased individual trustee. These are the present accountants.

The life tenant died in 1938, terminating the trust, which was the occasion for the present accounting. The account reveals retention of the stock as part of the trust assets. The shares have depreciated in value since 1930. The remaindermen objected to the retention and claimed and secured a surcharge for the loss.

The auditing judge, in a well-considered adjudication, exonerated the trustees from liability for retention from the date of receipt of the nonlegal securities in 1920 until the date of the award to the present trus-

tees on January 13, 1930, and for one year thereafter. He ruled that, because the trustees had received the nonlegal stock in 1930, there being no testamentary authority to retain, it was the duty of the trustees to have converted the securities with reasonable diligence; that such conversion should have taken place, *in the facts of this case*, at least within a year after receipt of the stock by the trustees. Having failed so to convert, the surcharge was imposed.

Exceptants vigorously deny that it was the duty of the trustees to convert as above stated. They further maintain that the acquiescence of the life tenant and remaindermen, and the various awards of this court from 1920 to 1930, exempted the trustees from all liability, and foreclosed the remaindermen from objecting to the further retention of the nonlegals since 1930, the date of the award to them.

Pending the present litigation, Casani's Estate, 342 Pa. 468, was being considered by the Supreme Court. Consideration of the exceptions in this case was deferred and reargument ordered.

Casani's Estate settles the rule that a trustee, who is not authorized to retain nonlegal investments, is under a duty to convert with reasonable diligence. This the Supreme Court defines (p. 472) as "within a reasonable time considering the circumstances". The trustee must exercise common prudence, common skill, and common caution in the performance of his duties—or, differently stated, due care in the circumstances (p. 472). Naturally, each case differs in its own particular facts. These facts must, in each instance, be analyzed and considered to determine whether a trustee has exercised reasonable diligence, in the circumstances, in such retention.

It has always appeared to the opinion writer (although his views may not be shared by this or the Supreme Court) that upon fundamental principles of the law, concerning the duty of a trustee to convert non-

legals, the majority and minority opinions were quite close in thought. All conceded that the trustee's duty was to convert and not to retain; also that he was required to act within a reasonable time under the circumstances. In *applying* this rule the minority views were that there should be imposed a fixed period of time within which the trustee was presumed to have had ample time to convert, and, upon his failure so to do, then to have cast upon him a burden to justify further retention. This presumptive period of time was an arbitrary one fixed at one year. The majority found no justification or basis for fixing any preliminary measure of permitted time for retention, and held that in the circumstances of each particular case the duty upon the trustee was to convert within a reasonable time, with due care. In none of the opinions was it ever stated or intimated that the trustee's duty was otherwise than to convert with reasonable diligence. The chief difference in opinion was the divergence of view as to the *application* of the law to the facts. The minority regarded the finding of the auditing judge, that the reason for retention was solely that of speculation, as *one of fact*. Upon the contrary, the majority regarded the findings of the auditing judge as *conclusions* drawn from the uncontradicted facts. The majority differed from the conclusions and ruled that, in the circumstances, the trustee *had* acted with reasonable diligence and there should be no surcharge because of retention.

But, irrespective of the correctness of the foregoing analysis of the various opinions in Casani's Estate, the rule remains fixed that a trustee's duty is to convert nonlegals within a reasonable time considering the circumstances.

Applying the foregoing rule to the facts of the instant case, we agree with the learned auditing judge that there is not the slightest testimony which justified the retention of these nonlegal securities. The auditing

judge concluded that the trustees ought to have acted within one year after the award to them of the securities in question. We do not regard such period other than as the exercise of the auditing judge's discretion, under the facts of this case. In another case, and under different circumstances, any such period might be regarded as nonexistent—a week, a month, a year, or even more. Certainly, the auditing judge in this case was most generous in allowing a whole year for such determination. Apparently, the sole consideration of the trustees as to the wisdom of retention was their conclusion that the stock was sound and was paying most satisfactory dividends. Nowhere in the testimony do we find any inquiry by the trustees as to the intrinsic value, or true worth, of the stock when it came into their hands, and the determination of whether any time during the period of retention was a proper time to sell the stock, and thus discharge their duty to convert non-legal investments. We agree with the auditing judge that what the trustees did was not sufficient to justify such retention. This is especially true when it is considered that this stock had a ready market at a price, presumptively at a fair profit, in view of the stipulated book values, at any time between 1930 and 1935, inclusive. Certainly this reveals that the retention was purely speculative and unjustified.

It should be noted that the retained stock was stock of the corporate cofiduciary. Such retention, under certain circumstances, might increase the burden of justification for retention. However, at the reargument counsel agreed, at the bar of the court, to eliminate a consideration of this feature.

The learned counsel for exceptants argues with much earnestness, irrespective of the above-stated rule and its application to the present facts, that the remaindermen are estopped from complaining because of the acts of this court and the acquiescence of the parties themselves. Curiously enough, he maintains that, because

of such retention for a period of some 20 years, the security became irrevocably attached as a part of the trust res, analogous in principle to the "rule of the case". This extraordinary doctrine is expounded in counsel's brief in the following language:

"We submit that by the acts of the court and the parties themselves there have been established in this estate what may be termed 'the rule of the case' (as analogous to the law of the case as defined in Reamer's Estate, 331 Pa. 117), and that this rule was that such stock should continue to be held so long as in the judgment of the trustees it continued to be a sound investment and productive of generous income for the life tenant."

We can subscribe to no such doctrine. The trustees received these nonlegals from the executors in 1920 and carried them until 1922, when they were awarded back to them. When the trustees once more accounted in 1929, and the securities were again awarded to them in 1930, it may well be that the parties, because of notice, may be held to have been estopped or to have acquiesced in such retention *up until that time*. (See note 7 in Wilbur's Estate, 334 Pa. 45, 54, as to the distinction between laches and acquiescence.) It is obviously untenable, however, to maintain that, because the parties acquiesced in the retention for the first period of 10 years (or may have been estopped from so complaining because of their laches), this presupposes that the parties acquiesced in the further retention for the succeeding 10-year period, or until the trust terminated. No authority has been cited for such a curious legal proposition, and we can find none. In our own court, in O'Brien's Estate, 18 D. & C. 501, Judge Van Dusen, in discussing the question of retention where there were intervening adjudications, wrote (p. 502):

"Down to 1929 the risk which the trustee took has not gone against it, *for the adjudications protect it; but from June, 1929, the risk began again, and the*

*trustee ought to have set about selling as fast as he could get a reasonable price."* (Italics supplied.)

But it is stressed as an additional excuse for failure to convert that the remaindermen have acquiesced in such retention, and are therefore estopped from objecting. Great reliance is placed upon the decisions in Clabby's Estate, 338 Pa. 305, and Shipley's Estate (No. 1), 337 Pa. 571. In the former case accounts and statements were regularly received by all interested parties and the record revealed approval of such retention. The Supreme Court decided, under the facts of that case, that it was a clear case of acquiescence. In the latter case, an executor, after ample notice to all parties, retained the stock with their full acquiescence.

The present case differs from the facts in the two foregoing cases in that, while at the last adjudication in 1930 all parties had full notice of the retention, *yet since 1930—for 10 years—there is no evidence that the remaindermen were given notice of the continued retention and acquiesced therein.* Herein lies the distinction. Had the remaindermen (as well as the life tenant) received, during this period, regular notice of such retention (which they did not), it may well have been argued, with considerable force, that the remaindermen acquiesced in such retention and are estopped from now objecting. Unfortunately for exceptants, this was not the fact.

There is no evidence which reveals any *affirmative act* of the remaindermen in consenting to or affirming the investment: Stephen's Estate, 320 Pa. 97; Macfarlane's Estate, 317 Pa. 377. Until the remaindermen succeed to their interest, they are under no duty to object to such investment: Wilbur's Estate, 334 Pa. 45; A. L. I. Restatement of Trusts, §219(2), com. (*e*); §216, com. (*a*).

We are unanimously of opinion that, because the remaindermen did not object to the retention of the non-legal securities at the audit of 1930, they did *not*

thereby impliedly acquiesce in further retention for the succeeding 10 years and until the final termination of the trust. In our view, to exempt these trustees from liability for their failure to convert after January 1930 requires proof that the retention resulted from the exercise of due care in the circumstances. In the absence of such proof, then the trustees must show either express consent to retain or acquiescence of the parties. The record, in this case, is devoid of any such testimony.

The exceptions are dismissed and the adjudication is confirmed absolutely.

(Van Dusen, P. J., did not sit.)