## Huff Estate.

Argued March 23, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*William H. Eckert,* with him *Fred B. Trescher,* of *Kunkle, Walthour & Trescher, Frank L. Seamans* and *Smith, Buchanan & Ingersoll,* for appellants.

*Robert W. Smith,* of *Smith, Best & Horn,* and *Scott Fink,* with them *Henry E. Marker, Jr.,* of *Marker & Rial,* for appellees.

OPINION BY MR. JUSTICE LINN, April 19, 1943:

This appeal is from a decree, dated December 29, 1942, dismissing exceptions to the first and final account of Safe Deposit and Trust Company and Kate E. Huff, executors of the estate of William A. Huff, and ordering distribution of undivided interests in certain real property. As the only assignment is to the final decree, we accept the facts as stated by the learned court below and limit our inquiry to whether, on a proper application of the law, they support the decree: *Stephen's Estate,* 320 Pa. 97, 181 A. 559; *Edirose Silk Mfg. Co. v. First National Bank and Trust Co.,* 338 Pa. 139, 12 A. 2d 40. Three of testator's five children have appealed, complaining that a desired surcharge was refused.

The exceptions related to transactions concerning improved real estate in Greensburg, known in the record as the Huff-Adrian-Dorzuk property, which, by the decree, goes to the children in undivided fifths. While the case presents unusual features, there is no difficulty in applying controlling equitable principles.

William A. Huff died March 26, 1928, leaving property to his wife, Kate E. Huff for life or widowhood, then to five named children in equal shares, the share of one of them to be held in trust for life with remainder to her children. The sixth paragraph of his will is:

"In the management of my estate, my executors shall submit quarterly to my wife, a statement in detail and make a settlement with her, of all the incomes, proceeds and profits arising from my estate, both real and personal, during her natural life or widowhood.

"And I hereby nominate, constitute and appoint my wife, Kate E. Huff, and the Safe Deposit and Trust Company of Greensburg, Pennsylvania, Executors of this my last will and testament."

The executors qualified and entered on the performance of their duties. The fund on which Mrs. Huff received income was approximately $218,750, and from the death of the testator until June 19, 1939, the date of the account, she received $111,129.66 income. She died January 14, 1942. The executors' account, which, according to the Docket Entry, had been filed July 22, 1939, was confirmed absolutely August 2, 1939. With respect to the Huff-Adrian-Dorzuk property, the account showed an investment of $45,693.21 as of that date.

After it had been confirmed absolutely, one of testator's children asked leave to file exceptions, nunc pro tunc, challenging the administration of the Huff-Adrian-Dorzuk property. Exceptant sought to surcharge the corporate executor[1] but not the executrix, Mrs. Huff, although she received as income the amounts charged by exceptants to have been wrongfully paid out of principal in conserving the investment in the property. It was stated in argument that the same five children sharing in testator's estate, share in the same proportions the residuary estate of their mother. Obviously, if she joined in paying herself out of the wrong fund, and if her estate is now required to restore to capital the amount wrongfully received by her as income, her children will receive just that much less from her estate as would be gained by surcharging her in their father's

---

[1] The purpose was to surcharge Barclay-Westmoreland Trust Company, the Safe Deposit Company, in liquidation, being described as a "mere shell."

estate. We all agree that there is no merit in the appeal and that the final decree is required by the equities of the case.

Testator, Huff, was President of the Safe Deposit and Trust Company of Greensburg; Adrian was the Treasurer of the company and, in 1930, defaulted and absconded. In April, 1926, Dorzuk bought the property and gave his bond and purchase money mortgage for $9,000, apparently the full value; the bond and mortgage were assigned to Safe Deposit. Dorzuk then conveyed to Huff and Adrian undivided two-thirds interest in the property, the grantees agreeing to pay two-thirds of the $9,000 mortgage. Improvements were made and the property was appraised at $40,000. In August, 1927, the then owners, Huff, Adrian and Dorzuk, executed a second mortgage and gave their joint and several bond to Safe Deposit in the sum of $23,000. Safe Deposit then owned the two mortgages aggregating $32,000; the title to the land was in Huff, Adrian and Dorzuk. In the Inheritance Tax Appraisement, Huff's undivided one-third interest in the property was appraised at $15,000. On September 24, 1928, the executors paid one-third of each of the mortgages with interest to that date, a payment which did not discharge Huff's estate of contingent obligation resulting from the covenant assuming personal responsibility in the case of the $9,000 mortgage and the joint and several liability on the second mortgage bond.

On December 6, 1930, which was shortly after Adrian, the Treasurer of Safe Deposit, absconded, that company assigned its commercial assets, including the two mortgages in question, to Barclay-Westmoreland Trust Company of Greensburg. On May 2, 1931, Safe Deposit assigned to Barclay the assets held by it in its trust department. The agreement provided:

"Barclay hereby assumes, and hereby agrees to pay and discharge all of the liabilities and obligations of the Safe Deposit—principal and interest—which may

have accrued, to all of the beneficiaries, of and under the Trust Department of Safe Deposit, in the aggregate amounts as shown by the books of the Safe Deposit as of May 2nd, 1931, except such stock, bonds and other securities which are held in kind," etc.
and that,

"Under the direction of Barclay, partial or final accounts shall be filed in the several estates, constituting said Trust Department of said Safe Deposit, in the different Courts in which it may be necessary and essential so to do, and Barclay shall fully pay and discharge to the person or persons entitled to receive the same, the balances which may be shown by said accounts to be due and payable in the different trust estates, and other matters in which Safe Deposit has heretofore acted in a fiduciary capacity."

The opinion of the learned judge states that with the approval of the Commissioner of Banking the agreement continued in effect until May 1, 1940, and that Safe Deposit's corporate powers for liquidation purposes were terminated July 3, 1940. He also stated that from May 3, 1931, until the account of the executors was filed in 1939, the ". . . estate was actually administered under the direction and at the discretion of the Barclay-Westmoreland Trust Company."

In 1938, Barclay, having acquired both mortgages from Safe Deposit, as has been stated, entered judgment on the bond accompanying the second mortgage and issued execution. February 2, 1939, Barclay assigned both mortgages and the bond accompanying the first mortgage, and the judgment on the bond accompanying the second mortgage, to the testator's executors and, next day, at the sheriff's sale, the undivided two-thirds interest of Adrian and Dorzuk was bought for $1.00 by the executors. No interest on the mortgages had been paid since September 21, 1929, the income from the property having been "consumed" as the learned judge found, ". . . by repairs, insurance, etc., without

the payment of any interest." Early in 1939, Barclay paid principal and interest to February 3, 1939 (the day on which testator's estate became the sole owner of the property) amounting to $33,686.03 and $840.31 in taxes. The account shows that these sums and other sums were paid out of principal, the total so paid being the sum of $45,693.21,[2] as stated in the decree of distribution.

Argument was heard on the exceptions December 27, 1939. Afterward, on April 25, 1940, counsel for the exceptants obtained a rule on Barclay to show cause why it should not be made a party to the record as trustee of the estate of William A. Huff and why the exceptions theretofore filed should not be made applicable to it ". . . as though Barclay Westmoreland Trust Company had filed and was a party to said account, . . ." The court ordered that it be made a party "without prejudice."

[2] Appellees' Brief itemizes these as follows:

| | | | |
|---|---|---|---|
| "Sept. 21, 1928 | Paid by Executors on account of first mortgage principal ...................$ | 3,000.00 |
| | Interest on first mortgage .......... | 163.00 |
| Sept. 21, 1928 | Paid by Executors on account of second mortgage principal ................... | 7,666.67 |
| | Interest on second mortgage ....... | 268.33 |
| Feb. 2. 1939 | Paid by Executors Balance of principal on first mortgage .................... | 6,000.00 |
| | Interest on first mortgage ......... | 3,733.00 |
| Feb. 2, 1939 | Paid by Executors Balance of principal on second mortgage .................. | 15,333.33 |
| | Interest on second mortgage ....... | 8,619.70 |
| Feb. 2. 1939 | Paid by Executors — Balance of taxes 1935-1936 ........................... | 281.12 |
| Feb. 2. 1939 | Paid by Executors—1938 taxes ......... | 557.16 |
| | Paid by Executors—costs of foreclosure less refund .......................... | 69.15 |
| | Paid by Executors—cost of assignment of mortgages .......................... | 1.75 |
| | TOTAL .....................$ | 45,693.21 |

The appellants now contend that Barclay committed a breach of trust when it joined in selling to the executors the $3,000 interest in the first mortgage on the Huff-Adrian-Dorzuk property and should therefore be surcharged. In the circumstances, we must reject the contention. This $3,000 interest had been owned by Safe Deposit and passed to Barclay pursuant to the agreement, as has been stated. Testator had obligated himself for $29,000 plus interest on the bonds and mortgages. The property, according to the appraisements in evidence, at all times had a value very much in excess of the $3,000 interest, and common sense and business prudence required that the executors protect their investment by acquiring this small interest to which their investment was subordinated. The measure of duty imposed by law on the fiduciary was due care in the circumstances: *Jones' Estate,* 344 Pa. 100, 104, 23 A. 2d 434. It was a salvage operation. If, in advance of the sale, Barclay had asked leave of court to make it, leave would undoubtedly have been granted; to refuse would have been an abuse of discretion.

With respect to the payment of interest on the mortgages and taxes out of principal instead of income, the court was properly of opinion that the interest and taxes should have been paid out of income before Mrs. Huff received income, but the court noted that since her participation in the wrong, she had died and that exceptants had not brought in her representatives. Presumably, pursuant to paragraph 6 of the will, quoted above, she received the quarterly statements and made the settlements required; there is evidence that she participated in administration. She not only appears, therefore, to have participated in the wrongful diversion of principal and income but to have been the sole beneficiary of the diversion. Section 258 of the Restatement of Trusts provides: "(1) Except as stated in Subsection (2), where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that

(a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him; or

(b) if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit; and for any further liability, if neither is more at fault than the other, each is entitled to contribution.

"(2) A trustee who commits a breach of trust in bad faith is not entitled to contribution or indemnity from his co-trustee."

Comment d. states: *"Trustees not equally at fault. Where a breach of trust is committed and one of two trustees is substantially more at fault than the other, although both are liable to the beneficiary for the breach of trust, the loss should ultimately be borne by the trustee who is more at fault. If, therefore, that trustee makes good the amount of the loss resulting from the breach of trust, he is not entitled to contribution from the other trustee; and, conversely, where the other trustee makes good the loss he is entitled not merely to contribution but to indemnity from the trustee who is more at fault."* The learned court was right in refusing to surcharge Barclay, apart altogether from the question, which we need not discuss, whether Barclay could be surcharged in this proceeding.[3]

Appellants also complain of the allowance of commissions to the executors. The court states that by consent of all parties a distribution of all the assets, with the exception of the Huff-Adrian-Dorzuk real estate, was made by decree of distribution dated and filed May 29, 1942, a decree which became absolute June 8, 1942, and from which no appeal was taken. The court declined to consider this objection on the ground that it was not made within a reasonable time, and, that the

---

[3] See *Huff's Estate*, 15 S. & R. 39; *Commonwealth v. Gregory*, 261 Pa. 106, 104 A. 562.

executrix, Mrs. Huff, who received part of the commissions, had meanwhile died. We see no error in this exercise of discretion.

The decree is affirmed, costs to be paid by appellants.