## Morgan Estate

*W. Irvine Wiest* and *James Goldsworthy*, for executors.

*Frank S. Moser*, for claimant.

PER CURIAM, September 18, 1957.—This matter comes before the court on exceptions to the report of an auditor. The facts are not in dispute.

The record discloses that Mae Morgan, a resident of the Township of Coal, Northumberland County, died

testate on June 5, 1951. On June 9, 1951, letters testamentary were issued to Ifor G. Morgan, Elizabeth Shipman and Burton B. Smith, the executors named in the will.

Decedent, Mae Morgan, left personal property of the value of $2,471.75 and real estate of the value of $30,100 as shown in an inventory and appraisement filed by the executors on October 8, 1951.

On June 21, 1951, Kotanchik Lumber Company, Inc., of Shamokin, by its president, John Kotanchick, Sr., filed a claim as creditor of the estate of Mae Morgan, deceased, by handing a written notice thereof to W. Irvine Wiest, Esq., attorney for the estate. This claim is in the amount of $310.12 with interest, and represented the balance due for the construction, alteration and repairs to the real estate of decedent, located in Coal Township.

By writing dated August 13, 1951, and recorded August 27, 1951, in the office of the recorder of deeds for Northumberland County in Deed Book 345, p. 352, Ifor G. Morgan, L. Elizabeth Shipman and Burton B. Smith, individually and as executors of the estate of Mae Morgan, deceased, entered into a family settlement agreement providing for the distribution of the real and personal property of the estate and for the payment of the claims against the estate. Under this agreement, Ifor G. Morgan agreed to pay the existing mortgages, unsecured debts, administration expenses and family exemption amounting to $8,767.49 and included in this amount was the bill of Kotanchik Lumber Company, Inc, in the amount of $310.12.

On May 28, 1956, Kotanchik Lumber Company, Inc., by John Kotanchik, president, filed a petition for a citation to be directed to the executors to show cause why they should not file an account of their administration of the estate of Mae Morgan, deceased. On June 25, 1956, an order was made by this court making the said rule absolute and directing Ifor G. Morgan, L.

Elizabeth Shipman and Burton B. Smith to file an account of their administration of decedent's estate on or before July 16, 1956. Subsequently, on August 6, 1956, L. Elizabeth Shipman and Burton B. Smith filed their account as two of the executors of the estate of Mae Morgan, deceased. Ifor G. Morgan, the third executor, did not join in the same.

The account filed by the two executors was based on the family settlement agreement, rather than actual administration under the will. It set out a balance in the hands of Ifor G. Morgan in the amount of $310.12, after listing payment of various claims and voluntary distribution of real and personal estate to the executors as beneficiaries. The account did not show a payment of the claim of the Kotanchik Lumber Company, Inc., or any provision for the payment of the same by the executors.

On September 19, 1956, Kotanchik Lumber Company, Inc., filed an exception to the account for the reason that it did not provide for payment of its claim in the amount of $310.12 with interest. On October 8, 1956, the court on motion of L. Elizabeth Shipman and Burton B. Smith, two of the three executors of the said estate, appointed Charles E. Duncan, Jr., Esq., as auditor to pass upon the exception filed to their account and to make distribution of all undistributed funds remaining in the estate.

On December 11, 1956, the auditor held a hearing on the exception to the account at which all parties in interest were present. The claim of the Kotanchik Lumber Company, Inc., was properly proved and was admitted by all of the parties to be valid. However, the two accountants stated that this bill, under the family agreement, should have been paid by Ifor G. Morgan. The auditor, in his report, concluded that the bill due Kotanchik Lumber Company, Inc., in the amount of $310.12, should be paid by the executors of the estate.

together with all costs and expenses incurred by reason of the fact that it was through their fault that the audit became necessary, and surcharged the executors for the total amount of all bills as shown in the schedule attached to his report.

After notice by the auditor to the interested parties, the two accountants, L. Elizabeth Shipman and Burton B. Smith, by their attorney, filed exceptions to the report of the auditor. Kotanchik Lumber Company, Inc., filed a motion to dismiss the exceptions to the auditor's report. The auditor dismissed the exceptions filed to his report and caused it to be filed in the office of the clerk of the orphans' court.

In accordance with the provisions of rule 807 (*b*) of the rules of the Orphans' Court of Northumberland County, these exceptions are now before us for disposition.

The controlling question raised by the exceptions is whether the auditor erred in not concluding as a matter of law that the claim of the Kotanchik Lumber Company, Inc., the expenses incidental to the collection of the said claim and the costs incurred should be paid by Ifor G. Morgan and that he alone should be surcharged for the total amount of all bills as shown by the schedule attached to and made a part of the auditor's report. The accountants further except to the findings and conclusions of the auditor that they were likewise at fault in entering into a family settlement without providing for the payment of the claim of the Kotanchik Lumber Company, Inc.

The testimony taken before the auditor clearly proves a valid claim by the Kotanchik Lumber Company, Inc., against the estate of Mae E. Morgan, deceased. The creditor gave written notice of its claim within 12 days after the grant of letters. The claim was further recognized as a valid claim against the estate in the family

settlement agreement. The difficulty arises because of the failure on the part of Ifor G. Morgan to fulfill his obligation under the terms of the family settlement agreement to pay this claim. The Kotanchik Lumber Company, Inc., was not a party to this family settlement nor did it give any assent to the same.

Family agreements in the settlement of estates are favorites of the law and wherever possible such agreements will be upheld and are not to be disturbed without good reason: McCutcheon's Estate, 283 Pa. 157; Stephen's Estate, 320 Pa. 97; Edelman's Estate, 336 Pa. 4, 10. However, such family settlements are always subject to the rights of creditors of the deceased: Stein's Estate, 16 D. & C. 150.

Under the facts of this case, within two months after the grant of letters, the executors, who are also the sole beneficiaries under the will of decedent, executed the family settlement agreement and distributed the assets among themselves, the accountants relying upon the promise of the third executor, Ifor G. Morgan, to pay all claims against the estate. The creditor in this case did not join in the family agreement, was not a party thereto and consequently can not be deprived of the payment of his claim.

In this case the creditor satisfied the requirements of section 614 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.614, by filing a written notice of his claim. The executors made a voluntary distribution of the assets in the estate within one year of the grant of letters and without the filing, audit or confirmation of any account. Consequently, under section 732 of the Fiduciaries Act of 1949, 20 PS §320.732, this voluntary distribution was at the risk of the executors and makes them personally liable for the claim.

While there is no objection to the making of a family settlement and while in this case the agreement seems to have been a reasonable one, it was still the duty of

the executors to see that all creditors of the estate were paid. Settlement of estates by agreement provides no real safeguard from attack by creditors who make timely presentation of their claims. It was the duty of the two accountants and the remaining executor to provide for the satisfaction of the Kotanchik claim, and we can not compel the creditor to seek satisfaction of his claim from a promise made by Ifor G. Morgan in the family settlement agreement rather than from the estate of Mae Morgan, deceased, which was solvent. Consequently, the clear mandate of the statute concerning the payment of claims owed by a decedent can not be abrogated by a family agreement to which claimant was not a party. The auditor correctly concluded that all of the executors were liable for the payment of the Kotanchik claim.

The auditor was correct in holding that all of the executors were at fault for not satisfying the claim in this case and for compelling the creditor to pursue

to interest on account of these claims and should have been awarded the same in addition to the principal amount.

### Order

And now, to wit, September 18, 1957, the exceptions filed by L. Elizabeth Shipman and Burton B. Smith to the auditor's report are hereby dismissed. Claimant, Kotanchik Lumber Company, Inc., is allowed interest on its claim of $200 at the rate of 6 percent per annum from May 18, 1950, and on the sum of $110.12 at the same rate from December 4, 1948, and, with this addition of interest, the schedule as attached to the auditor's report is approved and the executors, Ifor G. Morgan, L. Elizabeth Shipman and Burton B. Smith, are surcharged in that sum. With this correction, the report of the auditor is hereby confirmed absolutely.

Exceptions are noted for the executors, Ifor G. Morgan, L. Elizabeth Shipman and Burton B. Smith.

BOLGER, J., December 23, 1957.—Anna M. Morton died July 23, 1950, leaving a will dated March 25, 1946, which was duly admitted to probate, and upon which letters testamentary were granted to Margaret Wilson, the executrix named therein.

Proof of advertisement of notice of the grant of letters to the accountant was submitted and will be found annexed.

By the terms of her will testatrix devised premises 3254 D Street, Philadelphia, to her daughter, Edith M. Buckwalter "providing that my daughter is divorced from her husband S. Howard Buckwalter", otherwise testatrix directed "that my property be held in trust . . . so that the net income of the property shall be given to my beloved daughter, Edith M. Buckwalter, but title shall not be conveyed to her until she is divorced". In paragraph three testatrix further provided: "In the event my beloved daughter, Edith M. Buckwalter, should secure a divorce from her husband subsequent to my death, and while title is being held by the trustee, it is my desire that the trustee immediately execute the required papers to convey title to my beloved daughter."

Should her daughter die "while the trust is in existence", testatrix further provided that the income from the property should be applied for the benefit of the daughter's children until the oldest child attains 21 years of age, whereupon title to the property is to be conveyed to such child for the benefit of all the daughter's children.

Testatrix gave the residue of her estate to her daughter absolutely.

Edith M. Buckwalter contends that the condition requiring her to procure a divorce from her husband if she would have an absolute estate in premises 3254 D Street, Philadelphia, should be nullified as contrary

to public policy, and that the property should be awarded to her freed of the condition.

Where testator's purpose, in imposing a condition, is to induce future separation or divorce of husband and wife, the condition is void as against public policy, and the devise or legacy takes effect: Mayer v. McGraw, 10 York 5; Justus' Estate, 5 D. & C. 749. If the will, however, merely provides for the contingency of divorce, and does not express an intent to bring it about, the provision is valid: Rininger's Estate, 305 Pa. 203.

In order to determine the question involved it is necessary that testatrix' intent be ascertained by a consideration of the entire will, which of course must be read in the light of the circumstances surrounding her when she made it. The attendant circumstances include the condition of testatrix' family, the natural objects of her bounty, and the amount and character of her property.

Edith M. Buckwalter is testatrix' only child and sole next of kin, and consequently was the natural object of her bounty. She and her husband are living together with their five children at 1046 Maple Avenue, Ardsley, and were living together when testatrix made her will in 1946. As stated by testatrix in her will, premises 3254 D Street, Philadelphia, was her "chief asset." That she intended her daughter to have the property is obvious from a mere reading of the will. The will provides that the daughter shall have the property (a) "provided (she) is divorced from her husband. . ." at the time of testatrix' death, or (b) if she "should secure a divorce from her husband subsequent to my death, and while title is being held by the trustee, it is my desire that the trustee immediately execute the required papers to convey title to my beloved daughter."

It is clear from the language of the will that the sole purpose of the trust was to hold title to the real estate pending such time as testatrix' daughter should procure a divorce from her husband. It is to be noted that title to the real estate is not to be conveyed to testatrix' daughter if her husband should die. It is to be conveyed by the trustee only if the daughter should procure a divorce. It can hardly be said, therefore, that testatrix was providing for her daughter in the event she did not have her husband's support. The emphasis is placed upon the procurement of a divorce, and the inducement is an absolute estate in the property. She is to have an absolute estate if she is divorced from her husband at the time of testatrix' death, a contingency which did not happen, but she is also to have an absolute estate if she procures a divorce subsequent to testatrix' death. In other words, the condition may be performed at any time and serves as a continuing inducement to the daughter to divorce her husband at any future time.

Considering the will in its entirety, and in the light of the circumstances surrounding it, I am impelled to the conclusion that the sole purpose of the condition annexed to the devise of premises 3254 D Street, Philadelphia, to testatrix' daughter was to induce her to separate from her husband and procure a divorce. Needless to say such a condition will not be countenanced and should be stricken down as against public policy and good morals. It is in hostility to the daughter's marriage and designed to destroy it. This the law will not permit. If allowed to stand, it might impair the domestic tranquility of her family with serious adverse results to her children, rendering the gift a menace to her happiness rather than a benefit, a prospect to which the court will not lend itself. Marriage is one of the basic voluntary institutions of our society. Public policy dictates that its existence be en-

couraged, not discouraged by parental or other attempted intimidation such as we here observe. Another basic institution, as pointed out, is the home which might be disrupted in this case if our decision were otherwise.

The auditing judge is satisfied that the appointment of a guardian ad litem to represent the devisee's minor children is not necessary. Such an appointment might disrupt the harmonious family relationship which now exists. The children's association with their parents is of infinitely superior importance to them than any possible material benefit they might receive if the trust were sustained.

I conclude that the condition annexed to the devise is void and the real estate will be awarded to the devisee freed of the condition. . .

And now, December 23, 1957, the account is confirmed nisi.