## Macfarlane's Estate.

Argued January 14, 1935.   Before SIMPSON, KEPHART, MAXEY, DREW and LINN, JJ.

*Robert von Moschzisker,* with him *Kingsley Montgomery* and *R. Sturgis Ingersoll,* for appellant.

*Francis B. Bracken,* with him *Taylor, Chadwick & Weeks,* for appellee.

OPINION BY MR. JUSTICE DREW, February 4, 1935:

William W. Macfarlane died testate in September, 1915, owning shares of stock in the United Dyewood Company, a Maine corporation, of which he was vice-president and a director. This company was the holding company of several subsidiaries, one of which, the American Dyewood Company, had a large plant at Chester, Pennsylvania, of which the testator was general manager. His holdings in these corporations at his death consisted of one share of preferred stock of the American Dyewood Company and 80 shares of first preferred, 349 of second preferred, and 736 of common stock of the United Dyewood Company.

These securities, the value of which constituted more than half the appraised value of his estate at his death, he bequeathed to the Delaware County Trust, Safe Deposit and Title Insurance Company, now the Delaware County Trust Company, "in trust, to hold the same, and at its discretion, to sell the same for a sum not less than one hundred thousand dollars for the entire stock," one-half the income to be paid to his wife during her life, the other half to his daughter during her life, and, at the death of each, one-half of the principal to be distributed as that decedent should by will appoint. During the administration of the estate by the executors, of whom the trust company was one, a plan of reorganization of the United Dyewood Company developed, to which the executors became parties; the principal purposes of the plan were stated in the notice to shareholders to be the distribution of the large amount of cash surplus and the retirement of the outstanding preferred shares. In August, 1916, Kingsley Montgomery, Esq., one of the executors, wrote to Mrs. Macfarlane, setting forth the principal features of the plan, and asking her to let Miss Macfarlane, the present appellant, who lived with her and was

traveling with her at the time, read the letter. The record discloses no evidence that the letter was not received or its contents not communicated to appellant, or that objections to the transaction were raised by either of the beneficiaries. In fact, counsel for appellant expressly admitted that there seemed to be no objection on their part.

In pursuance of the plan, the United Dyewood Company was dissolved, its corporate surplus and the surpluses of its subsidiaries distributed in cash to its shareholders, and its remaining assets transferred to the United Dyewood Corporation, a new holding company incorporated under the laws of Delaware. The preferred shares in the hands of the executors were redeemed with funds of the new company, and, of the $54,840.22 so received by the executors, $19,795 was used for the purchase of 214 shares of the preferred stock of the new company. The new shares of common stock, together with a special dividend of $239.19 a share, were distributed to the holders of common stock in the old company, the new shares being in the ratio of approximately two and four-fifths to each share of the old company. From the special dividend, $128,800 in cash, and participating certificates valued at $44,160, were received by the executors, who allocated $10,514.28 of the cash to principal and transferred the balance of the cash, $118,285.72, and the participating certificates, which eventually netted $47,-243.84, to income—the total amount received by the beneficiaries as income being $165,529.56, which was in addition to the quarterly dividends regularly paid on both preferred and common shares. Thus, in consequence of the reorganization, the estate acquired, including transfers to the executors and to the beneficiaries directly, and accrued interest, $211,303.56 in cash, 214 preferred shares, and 2,066 common shares in the United Dyewood Corporation, in lieu of the shares of United Dyewood Company and American Dyewood Company stock left by the testator, which he had authorized the trustee to sell

for $100,000, and which shortly after his death had been appraised at $116,000. A copy of a preliminary account, showing receipt of the cash dividend and the participating certificates, as well as the shares received in exchange for the old stock, was sent to Mrs. Macfarlane and Miss Macfarlane by the executors in January, 1917.

Upon completion of the administration of the estate in 1917, these shares were transferred to the trust company as trustee under the will, and at the time of the filing of the present accounts they were still held by it in the trust. Dividends averaging six and a half per cent were paid on the preferred stock to the date of the accounts, while dividends of approximately six per cent, amounting to $6,198 annually, were declared on the common shares until July, 1924, no common-share dividends having been declared since then. In 1919, the president of the trust company suggested to Mrs. Macfarlane that half of the new stock be disposed of and the proceeds invested in first mortgages. He was, however, eventually told by Mrs. Macfarlane that both she and Miss Macfarlane were unwilling to have it sold, for "sentimental" as well as business reasons. Although demand was made upon the trust company to pay legal interest on the trust funds when the common-share dividend was passed in 1924, no complaint that the shares had been improperly retained or should be sold was made by either beneficiary until the company was requested to file the present accounts in 1931. It was admitted by counsel that Miss Macfarlane was more than twenty-one years of age at the death of her father.

Exceptions to the accounts were filed by both the widow and the daughter of the testator. From the dismissal of the exceptions and confirmation of the accounts by the court below, Miss Macfarlane has appealed. No appeal has been taken by the testator's widow, although her interest in the estate was the same as that of appellant. The chief question raised by the appeal is whether appellant may surcharge the trustee on the ground that

the stock of the new corporation was an improper investment and should have been sold within a reasonable time (specified by her to be between 1921 and 1923) after its acquisition.

At the outset it may be noted that the shares of the new corporation might well be found to be so substantially equivalent to those of the old that the trustee's retention of them was within its testamentary authority to hold the shares left by the testator, and therefore entirely proper. The old company was purely a holding company, the real assets of which were the plants and business of its subsidiaries. The structure of the subsidiaries was in no way changed by the reorganization, and, except for the surplus distributed among the shareholders and the funds expended in the execution of the reorganization plan, the assets behind the capital stock of the new company were the same as those of the old. The new common shares maintained relatively as important a position and represented substantially the same interest in the enterprise as did the common shares of the former company, and would doubtless have been so considered by the testator. If a trustee holds shares of a corporation which he can properly retain, and the corporation is merged or reorganized into a new corporation, the trustee can properly receive and retain new shares issued in exchange for the old where they are substantially equivalent to the old shares and it is not imprudent for him to do so: In re Smith, [1902] 2 Ch. 667; Anderson v. Bean, 272 Mass. 432; see Restatement, Trusts (Tentative Draft No. 4), section 223, comment f. In view of the large special dividend paid under the reorganization plan, and the regular quarterly payment of six per cent dividends on the new shares, it could hardly be doubted that the acceptance and retention of the new shares was prudent.

However, we are not required to decide that question in the situation now before us. The court below denied the claim of surcharge on the ground that appellant's conduct amounted to an affirmance of the acquisition and

retention of the shares.  We think it was right in so holding.  There was evidence that Mrs. Macfarlane and appellant lived together and consulted each other as to their business affairs, that Mrs. Macfarlane had been informed, prior to its execution, of the proposed reorganization and its consequences to the estate, that the president of the trust company had frequent interviews with Mrs. Macfarlane, both before and after the reorganization, with reference to the estate and to the Dyewood holdings in particular, and that both Mrs. Macfarlane and Miss Macfarlane had decided against selling the new shares when a change in the investment was suggested by him in 1919. Furthermore, income statements, indicating the receipt of dividends from the United Dyewood Corporation shares, and statements as to the financial condition of the company, showing relevant items such as changes in the gross and net income and in the surplus of the company, were sent to appellant semiannually from 1917 on; in fact, her counsel expressly admitted that she knew the new shares were being held in the trust and that she was receiving dividends from them.  Likewise, a letter was addressed to her in October, 1924, informing her that the dividend on the common shares had been passed, and in December of that year a schedule of investments in the estate was promptly sent to her on the request of Mr. Montgomery, who was acting as her attorney.  Nowhere is it claimed that she did not receive any of these communications or that she was ignorant of the facts.  Clearly, the burden was upon her, in the face of the trustee's evidence, to show ignorance of the facts or inadequacy in the information supplied her, and, in the absence of any evidence of such ignorance or inadequacy, the court below was amply justified in finding that she was fully aware of the situation and had acquiesced in it.

Under these circumstances, appellant will not now be heard to object to the trustee's retention of the shares on the ground that they were an improper investment.  A competent beneficiary who with full knowledge of the

facts and of his rights expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety: Armitage's Est., 195 Pa. 582; Detre's Est., 273 Pa. 341; Brown's Est., 287 Pa. 499; see Restatement, Trusts (Tentative Draft No. 3), sections 208, 210. Affirmance of the investment may be implied from failure of the beneficiary to object within a reasonable time, although aware of the facts and continually receiving benefits from the investment: Curran's Est., 312 Pa. 416; Matter of Packard, 146 N. Y. Misc. 65; see Griffiths v. Porter, 25 Beav. 236; Willis v. Holcomb, 83 Oh. St. 254; Restatement, Trusts (Tentative Draft No. 3), section 210, comment a. Here there was more than enough evidence to indicate that the beneficiary had notice of the reorganization, of the acquisition of the new shares, and of the financial condition of the company from year to year, and that she had been unwilling to sell the shares in 1919. In such a situation it cannot be doubted that if she thought the trustee's action was improper she was under a duty to speak. However, she received substantial dividends on the shares of common stock for seven years and on the preferred stock for fifteen years without in any way objecting during that time to their retention or demanding that they be sold. Plainly, such conduct amounts to an affirmance sufficient to bar her claim of surcharge.

Appellant relies on Pray's App., 34 Pa. 100, as indicating that a trustee may be surcharged in spite of the beneficiary's approval of the investment. There, however, the beneficiaries were in total ignorance of material facts concerning the investment, and no effort was made by the trustee to inform them of the actual situation. That case is clearly not parallel to the case before us.

Appellant's statement of questions involved, which limits the scope of the appeal (Reese v. Pgh., 313 Pa. 32; Com. v. Seventh Day Baptists, 317 Pa. 358), does not present the question whether appellant could, although barred by her subsequent conduct from objecting to the

investment as unauthorized, complain that the trustee was negligent in failing to sell the common shares after dividends thereon were suspended in 1924. The court below was of the opinion that the trustee was not negligent under the circumstances. While we are not called upon to decide this question, it may be noted in passing that we do not see how such negligence could be found on the evidence disclosed by the record. At no time was there a very active market for these shares, and, as the court below found, after 1924 they could have been sold, if at all, only at a tremendous sacrifice in price. The company's current earnings were sufficient to account for a large proportion of the substantial dividends which were regularly declared on the preferred shares down to the filing of the accounts, and nothing appears to indicate that the trustee was not justified in believing that it would be of greater advantage to the estate to retain the common shares than to sell them at the sacrifice which would have been unavoidable. The business was a long-established one, and might well have been expected to return to its former prosperous condition. That it would have been unwise to sell after 1924 was the opinion not only of the president of the trust company but of several large shareholders who had been holders of shares in the old company and still held their new shares at the time of the hearing. Prior to 1924, there could be no question of negligence, the total earnings of the company having then been more than sufficient to pay the large dividends declared on both classes of shares. A trustee can be held to no higher duty than such an exercise of good business judgment and foresight, under the existing circumstances, as a prudent man would use in handling the property of another. We are satisfied that this trustee met that standard.

Decree affirmed at appellant's cost.