**PAUL et al. v. GIRARD TRUST CO.**
(two cases).
No. 7598, 7599.

Circuit Court of Appeals, Seventh Circuit.
Dec. 18, 1941.

Wilson, Crites & Wilson, of Hammond, Ind. (Jesse E. Wilson, Maurice E. Crites, and Wasson J. Wilson, all of Hammond, Ind., and Thomas G. Vent, of Chicago, Ill., of counsel), for Louetta Kurrie Paul.

Vincent O'Brien, John M. Baker, and Defrees, Buckingham, Fiske & O'Brien, all of Chicago, Ill. (John Wintersteen, of Philadelphia, Pa., of counsel), for Girard Trust Co.

Before SPARKS and MINTON, Circuit Judges, and BARNES, District Judge.

MINTON, Circuit Judge.

These appeals are from an order of the court below, based upon a Master's recommendation, surcharging the defendant trustee for losses claimed to have arisen from the alleged improper retention and sale of certain securities held in trust by the defendant for 'the plaintiff-beneficiaries. The questions presented for the consideration of this court by the appeal of the defendant are:

(1) Was the trustee authorized by the terms of the trust to retain in the trust certain securities which, under the law of Pennsylvania, were non-legal investments?

(2) If the trustee was so authorized, was it supinely negligent in retaining said securities as long as it did?

(3) Was the surcharge correctly computed?

The questions raised by the cross-appeal of the plaintiffs relate to the method of computing the amount of the surcharge and interest thereon.

The plaintiffs, two of whom hold life estates under the trust and two of whom hold remainder interests in the trust, are citizens and residents of Indiana. The defendant is a citizen of Pennsylvania doing business in Illinois as well as in Pennsylvania.

The defendant was appointed trustee of the trust in suit during the administration of the estate of D. Walter Kurrie, who at the time of his death was a resident of Indiana. After his death on March 23, 1918, two instruments, one in the form of a letter, were admitted to probate as his will in the Circuit Court of Orange County, Indiana. The pertinent

portions of said instruments read as follows:

"Philadelphia, December 13, 1915.
"Last Will and Testament of D. Walter Kurrie.

"I, D. Walter Kurrie, being of sound mind, after all bills and funeral expenses are paid, do hereby will and convey to George R. Kurrie all my property, of whatsoever kind that I die possessed of.

"(Signed)  D. Walter Kurrie.

"Witnesses:

"Susie Jennings
"Margaret Thomas."

"Philadelphia, December 13, 1915.

"George: In leaving you all my property, I do so, knowing well, that all of my wishes herein set forth will be most carefully carried out by you.

"Should you desire to turn the affairs over to the Girard Trust Company, well and good. * * *

"Form a small trust fund, say with ten shares of Stetson common, the income from which is to be spent in educating some worthy boy from the Town of Paoli, Indiana, no one boy to receive the income for more than four years, unless in your judgment a genius would be lost. Give the Williams' something as a keepsake.

"The remainder of my estate, I desire to be held in trust for not more than ninety-nine years, the income to be divided as follows:

"Seventy percent (70%) to be paid to my sister, Louetta Kurrie Paul, and at her death to Walter Kurrie Paul or his guardian until he becomes of age, and at his death to his heirs;

"Fifteen percent (15%) to S. P. Kurrie, and at his death divided among his children or their heirs.

"Fifteen percent (15%) to T. J. Kurrie and at his death divided among his children or their heirs.

"At the end of ninety-nine (99) years (you can shorten this if you think advisable), the residue or principal to be divided among the heirs in the same proportion as they have received the income. * * *

"(Signed)  D. Walter Kurrie.

"Witnesses:

"Susie Jennings.
"Margaret Thomas."

Letters of administration were granted to George R. Kurrie in 1918, and he proceeded to administer the estate until his discharge by order of court on December 8, 1919. When he presented his petition for final accounting he requested the court to approve the account of his administration and also to approve a form of trust agreement to be executed by himself as administrator with the Girard Trust Company, the defendant. By this trust agreement, which was approved by the court and under which the trust in suit has been administered, Kurrie delivered, assigned, and transferred to the Girard Trust Company certain securities:

"To Have and To Hold, the same, In Trust Nevertheless, for the following uses and purposes, that is to say: In Trust, to hold the said stocks and securities and to keep the same invested, and to alter, vary and change, transfer and retransfer investments and reinvestments in its discretion, and to collect the income therefrom, * * * *".

Among the securities transferred to defendant were certain stocks which, it is conceded, constituted non-legal investments for a trustee under the Constitution and applicable statutes of Pennsylvania. The corpus of the trust is in Pennsylvania, and the parties have stipulated that the liability of the trustee, if any, is to be determined under the laws of Pennsylvania.

The trustee held these securities from 1919 until 1935 and 1936, when it sold them at a considerable loss. It is to surcharge the defendant for this loss and to recover interest thereon that this suit is brought by the life estate beneficiaries and the remaindermen beneficiaries of the trust.

Counsel for both parties with much vigor and learning have argued many propositions of law relating to whether the letter constituted part of the will; to the jurisdiction of an Indiana Circuit Court sitting in probate; to whether a judgment of said court sitting in probate may be collaterally attacked; to whether the trust in question is a testamentary trust, created by the will, or an inter vivos trust, created by the trust agreement heretofore mentioned and, in part, quoted; to whether the trust agreement authorized the retention of non-legal securities by the trustee; whether there is sufficient evidence to support the finding of the trial court that the defendant was supinely negligent in administering the

trust; and to whether plaintiffs are estopped to bring this suit.

We may mention that the trial court further concluded that neither the trust agreement nor the will authorized the trustee to retain non-legal securities, and that the trust was a testamentary trust.

The plaintiffs contend: (1) that the trust was created by the will and that, since the will did not authorize the trustee to retain non-legal securities, it has no such authority; (2) that if the trust was created by the trust agreement and is to be governed thereby, yet the agreement did not authorize the trustee to retain said non-legal securities.

The defendant contends that the trust is an inter vivos trust, created by the trust agreement, and that said agreement does authorize the trustee to retain non-legal securities.

The will clearly does not grant any authority to the trustee to retain non-legal investments. Since it is not disputed that the terms of the trust are to be gathered either from the will or from the trust agreement and since we do not believe that the trust agreement authorizes the trustee to retain non-legal securities, we need not discuss most of the questions raised by counsel.

The defendant seeks to find its authority to retain the non-legal securities in the word "hold" which follows the second use of the words "in trust" in the trust agreement. As so used, it argues, the word "hold" is not a word of grant as it was in the habendum. The repetition of the word indicates that it is used in a different sense the second time, that it is used in the sense of "retain," that it relates to the securities forming the corpus of the trust, and that it is used to define the powers of the trustee. We do not say that the defendant's construction of the instrument is unreasonable.

The plaintiffs contend that the second time it is used the word "hold," inasmuch as it follows the phrase "that is to say," is merely in apposition to the word "hold" in the habendum, that it indicates only that the trustee is to have title to the securities. This construction too, is reasonable, especially when we consider that the words "in trust" are repeated in the instrument. Surely the words "in trust" have the same meaning both times they are used.

Since the instrument is susceptible of contradictory constructions, both of which are reasonable, it is ambiguous. It does not clearly grant authority to the trustee to retain the non-legal securities. Under the law of Pennsylvania, as expressed in In re Taylor's Estate, 277 Pa. 518, 121 A. 310, 37 A.L.R. 553, such authority must be clearly shown in order to be effective. The presumption is against the existence of a power of retention.

Since counsel for both parties rely strongly on the Taylor case and since we base our decision on the same case, we feel it our duty to discuss that case at some length.

The will which created the trust in the Taylor case stated in part:

"I give, devise and bequeath to my executor hereinafter named all the rest, residue and remainder of my estate, * * * to have, hold, take, manage, convert, invest and dispose of the same as they may consider to be to the advantage of my estate, as hereinafter provided, in trust, nevertheless to pay over" etc.

The appellant in that case, seeking to surcharge the trustee for losses resulting from the retention of non-legal securities in the corpus of the trust, contended that the words "to have, hold, take, manage, convert, invest and dispose of the same as they [the executor] may consider to be to the advantage of my estate, as hereinafter provided," referred only to the powers of the executor pending distribution of the estate and not to the powers of the trustee after distribution had been made to it. The appellee trust company contended that the trustees were by those words given discretionary powers of management.

The court did not dwell at length on these contentions. It said:

"It is sufficient to state, without going into an analysis of the present will, that, when all doubts are resolved against appellee, testator's intent to confer on it the power to make nonlegal investments is not established 'with the utmost clearness,' so far as the instant trust is concerned, and this conclusion controls the decision of the point under consideration in favor of appellant."

Later in its opinion the court said: "the rule in respect to holding nonlegal securities owned by a decedent, which governs executors and other personal representa-

tives, with their presumably short-duration trusts, should, for obvious reasons, be more liberal than that governing trustees fixed with the duty of managing an estate during a long period of years."

It is true that the statement quoted by the court from In re Barker's Estate, 159 Pa. 518–528, 529, 28 A. 365–367, 368, which enunciated the rule that a power to invest in non-legal securities must be clearly shown and that the presumption is against the existence of such a power, concerned the power *to invest* in non-legal securities rather than the power *to retain* non-legal securities; but the court apparently applied the same rule to the power of retention since it held that the trustee had neither the power to invest in non-legal securities nor the power to retain such securities. The court quoted with approval from .Perry on Trusts (6th Ed.) Section 465 to the effect that the distinction between the power to invest in non-legal securities and the power to retain such securities cannot safely be acted upon as controlling.

■ It may be noticed that the trust instrument in the present case was drawn by a Philadelphia lawyer who at times was employed by the defendant. Presumably he was acquainted with the trust laws of Pennsylvania. If he had intended to give the trustee power to retain non-legal securities, would he not have done so in clear, unmistakable language, such as often appears in trust instruments?

We do not, then, agree with defendant that the Taylor case supports it in its contention that it had the power to retain non-legal investments. We have examined other cases cited by defendant[1] but of these we say, as the court said in the Taylor case of cases there cited by the defendant-trustee, "each of these decisions stands on its own facts rather than on any controlling principle."

■ The defendant has argued that the plaintiffs, having received income from the trust for several years without objection to the nature of the securities held by the trustee, are now estopped to question the nature of the stocks in suit. The defendant has not, however, shown that the beneficiaries of the trust are competent persons aware of the facts, and this defense must fail. In re Macfarlane's Estate, 317 Pa. 377, 177 A. 12.

■ The Taylor case held that a trustee with no power of retention must, in the absence of strong explanatory circumstances, dispose of non-legal securities within a reasonable time. Defendant admits that there are no exceptional circumstances to justify its retention of the non-legal securities. The trial court found that one year constituted a reasonable time in the present case, and we do not believe we should disturb this finding.

■ In computing the surcharge the trial court subtracted the amount realized upon the sale of the non-legal securities in 1935 and 1936 from the amount which would have been realized if the trustee had sold said securities during the year of 1920, and surcharged the difference. The court applied the equitable maxim that equity considers that as done which should have been done. It therefore used as a basis for its computation the amount which the trustee would have received for the stocks if they had been sold when they should have been, that is, in 1920. We believe that the method used was fair and proper. (On computing a surcharge, see Scott on Trusts, Vol. 2, § 209.) Hence, the prayer of the plaintiffs on their cross-appeal that the surcharge be increased by using as a basis for the computation of the surcharge the highest figure at which the stocks could have been sold from 1920 to 1935 and 1936 is denied.

■ The trial court further found that a fair average income from legal investments in Pennsylvania is 3%. It charged the trustee with interest at that rate on the surcharge, allowing the trustee to deduct from said interest any dividends on the stocks in question paid to the life-estate beneficiaries. Since the amount of dividends so paid exceeded the interest due, the interest was extinguished.

Although the life tenants have received a larger income from the trust than average legal investments would have given them, they now ask that they be given interest from the time that the companies in which the non-legal stocks were held defaulted in the payment of dividends until the sale of said stocks and that no past dividends received be credited on interest so

---

[1] In re Clabby's Estate, 338 Pa. 305, 12 A.2d 71; In re Macfarlane's Estate, 317 Pa. 377, 177 A. 12; In re Trinkle's Estate (Orphan Court of Phil. Co., unreported); Braun's Estate, 30 Pa.Dist. & Co. R. 575.

814

computed. Such a claim comes close to acquiescing in the trustee's retention of the non-legal stocks. Plaintiffs seek both to ratify and to disaffirm the trustee's action. We see no merit in this claim. (The subject is discussed in Restatement of the Law of Trusts, Section 209, subsection 1, illustration 1.)

■ Since the dividends paid to the holders of the life estate exceeded the interest due them, the defendant claims that the surplus should be credited against the body of the surcharge. Admitting that the life tenants have received more than the average income from legal trust investments, yet the loss must fall upon the trustee rather than upon the remaindermen.

We hold, then, that the trustee was not authorized by the trust instrument to retain the non-legal securities; that plaintiffs are not estopped to bring this action; and that the surcharge was in all respects properly computed.

The decision from which the appeals were taken is affirmed.