# In re Jones Trusts

C.P. of Philadelphia County, O.C. Nos. 158 IV of 1971, 159 IV of 1971

HERRON, *J.*, March 18, 2015—

## Introduction

The motion for partial summary judgment filed by Trustee PNC Bank, N.A., challenges the viability of objections to its past trustee compensation by certain trust beneficiaries who either explicitly consented or acquiesced to those fees for more than two decades without seeking an account. Based on the documents presented by PNC and for the reasons set forth below, those objections limited to the trustees' past fees are without merit and are denied. A hearing is still necessary, however, on the remaining objections and the petition to remove PNC as trustee. This ruling does not address any request for a retroactive

increase in trustee commissions during the accounting period.

## Background

PNC Bank, N.A. ("PNC") is the present trustee for two trusts that were established by Louise E. W. Jones on October 29, 1923 (Trust 1) and November 29, 1923 (Trust 2). The original trustees for both trusts were The Land Title and Trust Company and Warren Graham. Trust 1 was created for the benefit of the settlor's two daughters, Evelyn Cubberly and Marion Graham. Trust 2 was created initially to provide income to the settlor. Upon the death of the settlor, the income from Trust 2 was to be distributed in equal shares to her two daughters. Warren Graham, the original individual co-trustee, died on February 9, 1932. Nelson Garden was appointed as successor co-trustee by decree dated May 14, 1932. Mr. Garden died on July 7, 1969. No substitute co-trustee was sought until June 2013, when Robert R. Kendall filed a petition to be named as individual co-trustee. This petition was granted without opposition,[1] and by decree dated August 19, 2013 Robert Kendall was appointed as individual co-trustee of both Jones Trusts.

On October 30, 2013, PNC Bank, as successor in interest to the original trustee, filed separate accounts of its administration of the two trusts covering the period April 12, 1972 through August 19, 2013. The assets of these two trusts are considerable. The balance of principal before distribution in Trust 1 is $10,388,374, while the balance of income before distribution is $12,333,042.

---

[1]. PNC Bank responded that it did not oppose the appointment of Mr. Kendall and that it would file an accounting for each of the trusts. It objected, however, to the "inexplicably lengthy petition" which consisted of 82 pages. *See, e.g.,* 6/24/13 PNC Answer (Trust 1) at 1.

The balance in principal before distribution for Trust 2 is $5,741,805.42 while the balance of income before distribution is $6,544,632. Four beneficiaries of the trusts filed objections to these accounts on November 27, 2013.[2] On December 2, 2013, Carole Sheffield, as counsel for Jean C. Wade, filed a miscellaneous entry stating that Jean C. Wade, a 4.166% current income beneficiary of Trust 1 and Trust 2, has joined as an objector to the accounts.[3]

The prolix and lengthy objections focus primarily on trustee fees both past and future. The objectors note that under Article Seventh of the original trust documents, the trustees were to share a 4% trustee commission based upon the annual income of the trust. In 1969, the individual trustee died and was not replaced until 2013 by Robert Kendall. The objectors therefore concede that during the accounting period, PNC would be entitled to the full 4% income commission. They complain, however, that in 1976 PNC sought to raise the commission from 4% to 6% without seeking judicial approval. They also assert the 6% commission was incorrectly calculated.

The objectors further object to a change PNC made as to its fees in 1989, when it began charging a commission rate based on its "then in effect fee schedule" minus certain

---

2. The objectors are Robert R. Kendall, co-trustee and beneficiary of the Jones Trusts 1 & 2 with 5% current income interest; David Garden, beneficiary of Jones Trusts 1 & 2 with 25% current income interest; Elizabeth Kendall beneficiary of the Jones Trusts 1 & 2 with 5% current income interest; Elaine M. Kendall beneficiary of Jones Trusts & 2 with 5% current income interest. PNC includes Jean Wade as an objector. She became an income beneficiary in 2001.

3. According to the miscellaneous entry, Jean Wade joined by electronic mail from Alaska and her objections were "filed and accepted on November 27, with the Clerk of the Philadelphia Court of Common Pleas. 12/2/14 Miscellaneous Entry. Although these objections do not appear on the docket, PNC includes Jean Wade as an objector. *See, e.g.,* 10/21/14 PNC Petition for Partial Summary Judgment, O.C. No. 158 IV of 1971, Memorandum at 1.

discounts. The objectors assert that this was improper for a variety of reasons: all of the present income beneficiaries did not consent to this modification; no judicial approval was obtained; and this modification could not bind future generations. The objectors contend the proper fee throughout the accounting period should have been 4%, though they seem amenable to a 6% rate commencing in 1976.[4]

The objectors assert that the assets of both trusts should be combined for purposes of calculating the appropriate fee "given that the present terms and beneficiaries of the two trusts are identical. In addition to challenging past trustee fees, the objectors challenge the trustees' request to change their future commission rate by (1) seeking to eliminate the discounts and (2) reallocating the source of those future payments from 100% of principal to a division based on 65% to principal and 35% to income. According to the objectors, the trustees have failed to justify an increase under 20 Pa.C.S. § 7768(b).[5] The objectors note that the accountant might also obtain higher compensation under 20 Pa.C.S.A. § 7705 but the accountant has failed to provide sufficient grounds for such an increase.

---

4. 11/27/13 Objections at 1-3.

5. 20 Pa.C.S. §7768(b) Compensation of trustee:

(b) *If specified, adjustment.-* If a trust instrument or written fee agreement signed by the settlor or anyone who is authorized by the trust instrument to do so specifies a trustee's compensation, the trustee is entitled to the specified compensation. The court may allow reasonable compensation that is more or less than that specified if:

(1) the duties of the trustee have become substantially different from those contemplated when the trust was created or when the fee agreement was executed;

(2) the compensation specified in the trust instrument or fee agreement would be unreasonable; or

(3) the trustee performed extraordinary services, and the trust instrument or fee agreement does not specify the trustee's compensation for those services.

In response to these accounts and objections, there was a flurry of petitions largely focusing on discovery issues. In August 2014, the objectors filed a Petition to Remove PNC as trustee and on October 21, 2014, PNC filed a Petition for Partial Summary Judgment. The procedural history of the Petition to Remove PNC as trustee is quite complex. PNC filed preliminary objections to that petition, which were granted by decree dated December 22, 2014 on the grounds of legal insufficiency and lack of specificity. The objectors were given 20 days to file an Amended Petition to Remove PNC which was filed on January 12, 2015. In light of the prolix nature of the amended petition, this court issued a rule to show cause why it should not be dismissed without prejudice due to its failure to conform to the rules of pleading. By decree dated February 3, 2015, the rule to show cause was dismissed following oral argument.

### Trustee PNC's Petition for Partial Summary Judgment as to the Narrow Issue of Past Changes in its Trustee Fee Commissions Is Granted Based on the Evidentiary Evidence

In contrast to the objectors' prolix petition to remove PNC as trustee of both Louise Jones Trusts, PNC's motion for partial summary judgment is scalpel sharp in focusing on the objections to its past trustee commissions paid during the period of accounting. PNC notes that in 1976, it sought to raise trustee compensation to 7% of income. To obtain that increase, PNC sent a consent letter to each of the income beneficiaries seeking their approval of the higher compensation. At the beginning of 1976, there had been only two income beneficiaries, the sisters Marion W.J. Graham and Evelyn L.J. Garden. But Evelyn Garden died on June 21, 1976 and her half

income interest passed to her two children: David Garden and Louise E. Kendall. Consequently, when PNC sought to increase its fees in 1976, there were only 3 income beneficiaries. PNC sent letters dated November 9, 1976 to those income beneficiaries: Mrs. Marion Graham, David Garden and Louise Kendall.[6] Within weeks, the trustee reduced its requested increase in compensation to 6%.[7] All three of the 1976 income beneficiaries returned written consents to this 6% increase in trustee commission. More specifically, Marion Graham, through her son and power of attorney John Graham, explicitly agreed to this 6% increase in trustee compensation by letter dated December 22, 1976 to the Vice President of Provident National Bank:

Dear Mr. Werley:

In response to your initial letter of November 9, 1976, as modified by your letter of November 16, 1976, and my letter to you of December 9, 1976, this letter is to advise that Marion W.J. Graham agrees to the commission of six percent commencing for the current fiscal years in the above trusts, subject to the provisions as set for in the correspondence identified above.[8]

The two other remaining income beneficiaries in November 1976, likewise consented in writing to the 1976 increase in trustee commission. Both David Garden and Louise Kendall explicitly consented to the 6% trustee commission in their joint letter to the Vice President of Provident National Bank dated December 9, 1976:

---

6. 10/21/14 PNC Motion for Partial Summary Judgment at 2 & Ex. C.

7. 10/21/14 PNC Motion for Partial Summary Judgment at 2 & Ex. D

8. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. E.

Dear Mr. Werley:

With regard to the Provident's proposed fee increase from four to six percent of income on your trust accounts of Louise E. W. Jones No. 1-46526 and No. 2-46527, the undersigned beneficiaries agree to the increase upon the following conditions:

1. We reserve the right to rescind the two percent increase by written notice to you at any time, longevity of fee existence notwithstanding.

2. Close attention will be given to investments of both portfolios and the performance shall be reported quarterly to all beneficiaries as in the past...

Very truly yours,

David A. Garden

Louise E. Kendall[9]

All the 1976 income beneficiaries, therefore, explicitly and in writing consented to the increase in trustee fee commission from 4% to 6%. In 1985, Louise Kendall died. Her 25% interest in the trust income, passed to her five children, outlined as follows by PNC in its partial summary judgment petition:

| Name | Objector Status | Income Interest |
|------|-----------------|-----------------|
| Evelyn Hiltebrand | non-objector | 5% |
| Robert R. Kendall | objector | 5% |
| Elaine M. Kendall | objector | 5% |

---

9. 10/21/14 PNC Motion for Summary Judgment, Ex. F.

Thomas E. Kendall          non-objector  5%

Elizabeth Kendall objector          5%[10]

Marion W. J. died in 1987. Her 50% interest in trust income passed as follows to her four children, none of whom have filed objections to the accounts:

| Name | Objector Status | Income Interest |
|------|-----------------|-----------------|
| John R. Graham | non-objector | 12.5% |
| Joyce G. Wade | non-objector | 12.5% |
| Jean G. Price | non-objector | 12.5% |
| Jeffrey W. Graham | non-objector | 12.5%[11] |

In 1989, the trustee once again sought to change its fees by contacting all the income beneficiaries. At that point, there were ten trust income beneficiaries. PNC sent a letter to all the income beneficiaries notifying them that for the past 12 1/2 years it had been receiving a fee based on 6% of trust income which was greater than the commission initially set in the trust documents. In this June 12, 1989 letter, the trustee also sought the beneficiaries' approval to charge commissions based on its scheduled rates from trust income with a 30% discount as follows:

Dear Ms. Kendall:

In the above two trusts, our bank has been receiving a fee of 6% of income chargeable to income for the past 12 1/2 years. In the #1 account that fee translates to the equivalent

---

10. 10/21/14 PNC Motion for Partial Summary Judgment, Memorandum at 3.
11. 10/21/14 PNC Motion for Partial Summary Judgment, Memorandum at 3.

of $2.47 per $1,000 or .00247 or (in the terminology which seems to be in favor today) 24.7 basis points.

You probably recognize that compared to the fees charged by most financial advisors, this is an extremely modest fee. On the other hand, the beneficiaries of the Jones' trusts over the years have been, in my estimation, equitable in permitting increases from time to time in the rates being charged which are over and above those set forth in the original Deeds of Trust back in 1923.

As you may know, we are entitled to a fee of 2% of the principal of the trust as each trust terminates as reduced by an interim fee (of approximately 1%) allowed to us by the court a number of years ago.

It had initially occurred to me to ask all of the beneficiaries if they would approve of increasing our fee from 6% of income to 7% of income, which in the # 1 account would increase our fee to 28.9 basis points, and in the #2 to 27.5 basis points, but I subsequently thought that all the beneficiaries might be better served and be happy with a proposal that going forward the bank be permitted to charge its scheduled rates in effect from time to time subject to a 30% discount, which would increase our fee to 28.7 basis points in the # 1 account and to 31.9 basis points in the #2 account, but, importantly, in conjunction with that our bank would agree to forego the termination fee when these trusts conclude.

In absolute numbers, such an increase in the fee being charged to income would cost you $34.72 per quarter in the #1 account and $37.91 per quarter in the #2 account in addition to the fee already being paid to our bank and in return (based on current market values) would save

a fee to the family *overall* in excess of $100,000 at the termination of the trusts.

One added feature of this proposal is that since our scheduled rates are occasionally adjusted (but this is always tempered by the competitive nature of the banking and financial industry in Philadelphia), it would be quite unlikely that you would be troubled in the future by any further fee requests on behalf of this bank.

If you concur with me that this seems to be a very desirable way to approach this matter, will you please so indicate by signing the enclosed approval copy of this letter and returning it to me in the envelope provided.

Sincerely,

Carl F. Werley

Vice President[12]

Eight of the ten income beneficiaries in 1989 signed and thus explicitly approved the trustee's 1989 letter requesting a change in the trustee's fee calculations.[13] Significantly, two of the objectors — David A. Garden and Robert R. Kendall — signed and consented to this change which they have now protested in their November 2013 objections to the account filed by PNC. In exhibit H, for instance, David Garden signed his name twice to the June 12, 1989 trustee letter after "Approved" and dated it "6/22/89." Likewise, in exhibit I, objector Robert Kendall signed his name twice after "Approved" to the June 12, 1989 letter from the trustee

---

12. 10/21/14 PNC Motion for Partial Summary Judgment at 4-5, Ex. G.
13. *See* 10/21/14 PNC Motion for Partial Summary Judgment, Exs. G, H & I.

seeking the consent of the income beneficiaries to charge fees based on the bank's schedule.[14]

As PNC concedes, two income beneficiaries — Elaine Kendall and Elizabeth Kendall- did not respond to this initial June 12, 1989 letter. The trustee therefore sent each of them three follow-up letters. In letters dated August 1, 1989 addressed separately to Elaine and Elizabeth, the bank vice president wrote:

> Dear Ms. Kendall:
>
> Approximately two months ago I wrote to all the beneficiaries of the Louise E. W. Jones Trusts regarding a proposed increase in the fees to our bank as Trustees of the above trusts. Since that time, I have received approvals from beneficiaries representing more than 75% of the income distributions, and I am hoping that you will join them by signing the approval copy of the letter forwarded to you under the date of June 12, 1989, or if that is not handy, by signing the photocopy of that letter which we enclose at this time.[15]

The bank vice president sent another letter to both Elaine and Elizabeth dated September 7, 1989 which stated:

> Dear Ms. Kendall:
>
> It has been a little over three months since I first wrote to all the beneficiaries regarding the proposed change in our fees. All the beneficiaries other than you and one other party have approved my suggestions, and I am hoping that I have not heard from you only because you have not had the occasion to sign the approval copy and return it to me.

---

14. 10/21/14 PNC Motion for Partial Summary Judgment, Exs. H & I.
15. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. J.

If you have any questions or any problems with my suggestions as to fees, I would be happy to try to explain them to you. If not, it would be helpful if you could sign either the previous approval copy or the approval copy of this letter and return it to me in the envelope provided so that we can proceed with the new proposals.[16]

A little more than a month later by letters dated October 18, 1989, the bank vice president informed both Elaine and Elizabeth of the trustee's intent to charge fees based on its fee schedule since it had obtained the approval for this change from 90% of the other income beneficiaries. In so doing, he assured both beneficiaries that as in the past the trustee fees would be set forth in their periodic statements:

Dear Ms. Kendall:

We have not had any response from our letters dated June 12, 1989, August 1, 1989, and September 7, 1989 to you, but since we already have the signed approvals of the income beneficiaries representing 90% of the income from the above two trusts we will be putting into effect the change in compensation set forth in our letter to you of June 12, 1989, which is to charge our schedule of rates in effect from time to time subject to a 30% discount and to agree to forego the balance of the termination fee payable to our bank when these trusts conclude.

As mentioned in the letter of June 12, 1989, this change in fee structure will only cost you approximately $34.72 per quarter in the #1 account and $37.91 per quarter in the #2 account. These numbers will of course change

---

16. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. K.

from time to time as the income and the valuation of the trusts change from time to time.

As in the past our compensation will continue to be reflected in the statement which you receive periodically.[17]

Based on this record, PNC filed its partial summary judgment motion as to these past fees only. It argues, first, that PNC has charged its scheduled rates with a 30% discount for the past 25 years with no objections to the statements the income beneficiaries periodically receive. The beneficiaries' claims are therefore barred either by explicit consent, by acquiescence or by laches. Procedurally, PNC asserts that only those beneficiaries who actually filed objections have standing to pursue them. The objectors would thus lack standing to assert claims on behalf of those beneficiaries who did not file objections on their own behalf. According to PNC, the claim of each beneficiary is limited to his or her proportionate share in the trusts. More to the point, it asserts that two of the objectors, David Garden and Robert Kendall, explicitly consented in writing to the 1976 or 1989 fee changes and thus may not object to these fees at this late date. PNC further asserts that beneficiaries and objectors Elizabeth Kendall and Elaine Kendall were given notice in 1989 of the proposed fee changes and they did nothing to object to them. By this inaction, they therefore acquiesced to them and cannot lodge protests more than 20 years later. Likewise, PNC argues that objector Jean Wade, who became an income beneficiary in 2001 at the death of her mother Joyce Wade, did not object to the trustee fees for the past 12 years. PNC notes that Jean Wade's grandmother, Marion Graham, had explicitly approved the 1976 change

17. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. L.

in trustee fees and that her mother, Joyce, had approved the 1989 change in fees. As a consequence, her objections are barred by laches.

In response, the objectors claim that any motion for summary judgment is premature because discovery has not been completed at the time PNC's motion was filed. They assert that the five beneficiaries who actually filed objections should be considered to represent the interests of all the beneficiaries who failed to file formal objections. In support of this position, they present with their November 20, 2014 "objections" to the partial summary judgment, an exhibit 3 which consists, *inter alia*, of a declaration by objector Robert Kendall that he has attempted to contact other beneficiaries of the trust, both current and contingent. "Thus far," he lists 9 income beneficiaries who "have agreed, in writing, with the objections we have filed as to the Account and the relief in the Petition."[18] He notes that these income beneficiaries total 39.169% of the current income interests and that these beneficiaries "indicate that they 'support and agree' with the Objections filed."[19] Signed statements of these beneficiaries were attached to Mr. Kendall's declaration which acknowledged:

> I did not join in the objection filing but want it to be known that I support and agree with the objections filed and accepted on November 27, 2013 by my fellow income beneficiaries.

18. 11/20/14 Objections by Robert Kendall, Ex. 3 "Declaration," ¶ 4.

19. 11/20/14 Objections by Robert Kendall, Ex. 3 "Declaration," ¶ 4. The following beneficiaries are listed in Mr. Kendall's Declaration: (1) Robert M. Graham — 4.167%; (2) Thomas W. Graham — 4.167%; (3) Jacquelin G. Newman — 4.167%; (4) Christine H. Price — 4.167%; (5) Robie Price — 4.167%; (6) Glen R. Wade — 4.167%; (7) Sydney L. Wade — 4.167%; (8) Evelyn L. Kendall — 5%; (9) Thomas E. Kendall — 5%.

Dated: 1/13/14 Sign Name: Robert M. Graham

Print Name: Robert M. Graham[20]

The objectors assert that PNC benefited improperly from increasing its commissions. They assert that the bank failed to disclose material information when it obtained the 1976 and 1989 Agreements to change its commissions. They assert that the fees that could be charged by the trustee were controlled by the law of contracts and not trusts and therefore, PNC could not change the 4% fee commission that had been set forth in the 1923 trust documents.[21] They argue that under the 1976 agreement that the beneficiaries had the right to rescind that modification and that each future beneficiary retained the right to rescind this modification. Despite this agreement, the objectors assert, the bank failed to advise each successor beneficiary of his or her right to rescind the increase in its commission.[22]

The objectors likewise assert that the 1989 commission change was invalid for a variety of reasons. First, they assert it was premised on unanimous consent of the beneficiaries and that was not obtained due to the failure of Elizabeth Kendall and Elaine Kendall to consent to that change. They also claim that the bank failed to notify the then-existing beneficiaries of their right to rescind the 1976 agreement. Finally, they complain that PNC has failed to pay Robert Kendall his co-trustee commission since his appointment.[23]

In broad strokes, the objectors assert that the consent of David Garden and Robert Kendall in 1989 was obtained by deceit and that these beneficiaries were not aware of their legal rights. Although conceding that David Garden

20. 11/20/14 "Objections by Robert Kendall, Ex. 3, Ex. A-1.
21. 11/20/14 Kendall Objections, Memorandum at 18-19.
22. 11/20/14 Kendall Objections, Memorandum at 20.
23. 11/20/14 Kendall Objections, Memorandum 20-21.

agreed to the 1976 commission modification, the objectors assert that both Mr. Garden and the bank understood that the 1989 commission modification required unanimous consent. They cite to Mr. Garden's declaration and to internal bank documents to support this claim.[24] More specifically, they present hand-written notes dated 6/5/89 stating, *inter alia*, "Currently 6% and we must obtain everyone's approval to sustain this."[25] They also maintain that Mr. Werley falsely informed his PNC superiors "that the unanimous approval was obtained for the 1989 agreement to increase commission,"[26] citing the following document presented as exhibit 16:

> F. Werley reported that the Income beneficiaries approved of an increase in compensation to our schedule rates in effect from time to time, less a 30% discount. All compensation should be charged against Income. The Bank has agreed to give up the 1 % principal fee at termination in each account. 11/20/14 Kendall Objection, Ex. 16.

As for Robert Kendall, the objectors note that he came into his 5% interest in the trust in 1985 when his mother, Louise Kendall, died. They note that at that point the bank failed to notify him of his right to rescind the 1976 agreement and failed to obtain his consent to that increased rate of commission. They maintain, once again, that Mr. Kendall understood that the 1989 fee change required unanimous consent of all the income beneficiaries which had not been obtained due to the failure of Elizabeth and Elaine Kendall to consent.

---

24. In paragraph 52 of his Verified Declaration, David Garden stated: "I believed that unanimity was required, consistent with the process by which the 1976 modifications were adopted and in accordance with the laws of the Commonwealth of Pennsylvania." 11/20/14 Kendall Objections, Ex. Verified Statement of David Garden.

25. 11/20/14 Kendall Objections, Ex. 13.

26. 11/20/14 Kendal Objections, Memorandum at 23.

The objectors assert that Elizabeth and Elaine Kendall cannot be deemed to have acquiesced to the 1976 or 1989 agreements because they lacked full knowledge of the relevant facts: the operative provisions of the Trusts' instruments, the 1976 amendment, or the 1989 attempted modification. Instead, they received "false, incomplete, misleading and erroneous information after the death of their mother from the trustee.[27]

Finally, the objectors claim that Jean Wade's objections are not barred by laches. PNC argues that Ms. Wade, who became an income beneficiary in 2001 upon the death of her mother, never demanded a formal accounting and has accepted the periodic statements as to trustee fees over the course of 12 years. Based on this inaction, her present objections are barred by laches. The objectors disagree, asserting that even if Ms. Wade had demanded an accounting that would not have uncovered that the "Bank has been misrepresenting the "unanimity" of consent under the 1989 agreement."[28] They reiterate that Ms. Wade was never informed of her right to rescind the increase fee agreement.

## Legal Analysis

Under Pennsylvania law, summary judgment may only be granted "where there is no genuine issue of any essential fact and the moving party is entitled to judgment as a matter of law." *Al's Cafe, Inc. v. Sanders Insur. Agency*, 820 A.2d 745, 748 (Pa. Super. 2003). The petitioner seeking summary judgment has the burden of establishing that there is no genuine issue as to a material fact. Moreover, a court must view the record in a light favorable to the non-moving party. *Laventhol & Horwath*, 396 Pa. Super. 553, 559, 579 A.2d 388, 390 (1990).

---

27. 11/20/14 Kendall Objections, Memorandum at 25.
28. 11/20/14 Kendall Objections, Memorandum at 26.

The standards for a summary judgment motion are also set forth in Pennsylvania Rule of Civil Procedure 1035.2 which provides:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

In this case, the objectors initially claimed that the entry of partial summary judgment is premature because discovery has not been completed. The parties subsequently filed a stipulation that discovery on the issues raised by PNC's motion for partial summary judgment would terminate on February 27, 2015 and that a ruling may be rendered on PNC's motion for partial summary judgment prior to the closing of the pleadings as to the Petition to Remove PNC as trustee because such a ruling would help limit the scope of the pleadings.

The material issue in this case is very narrow: whether the objectors consented or acquiesced to the change in trustee fees in 1976 and 1989 and whether the record is free from doubt. The objectors seek to obscure this narrow issue by asserting that they have the support of those

beneficiaries that did not file formal objections. While both PNC and the objectors characterize this as a preliminary question of standing, in fact it is a much simpler issue of the proper procedure for filing objections.

The objectors concede that Philadelphia Orphans' Court Rules 6.3.A and 6.10A outline the rules for filing objections to an account.[29] Phila. O.C. Rule 6.3.A(3), for instance, provides that if an account is contested, "an appearance in person or by counsel must be made at the audit and that written objections must be filed with the Clerk in accordance with Rule 6.10.A, or the claim or objection may be dismissed." Rule 6.10.A is, if anything, more emphatic as to the necessity of timely, written objections to an account since it provides:

Rule 6.10.A. *Written Objections*

Objections to an account or statement of proposed distribution must be in writing and shall be filed with the Clerk of the Orphans' Court no later than the time and date fixed for the original call of the account for audit, unless otherwise specified by Order of Court. Phila. O.C. Rule 6.10.A.

In this case, the two accounts that were filed for the Louise Jones Trusts were scheduled for the December 2, 2013 audit list. Timely, written objections were filed on November 27, 2013 and on December 2, 2013 (miscellaneous entry) by only 5 income beneficiaries: Robert Kendall, David Garden, Elizabeth Kendall, Elaine Kendall and Jean Wade. The narrow issue posed by PNC's summary judgment motion is whether these beneficiaries consented in writing or by acquiescence to the trustee commission changes of 1976 and 1989. The documents

29. 11/20/14 Kendall Objections, Memorandum of law at 15.

the objectors attached to their response to PNC's partial summary judgment do indeed indicate that additional beneficiaries do not oppose their objections but support them. But this cannot be translated into an expansion in time or scope that would add these additional beneficiaries to assert objections to the account in their own right. They merely support those objections formally filed which will be sustained — or denied — on their own merits.

To determine the validity of the objections raised by these five beneficiaries, the facts surrounding each beneficiary's objection must be examined for the existence of material issues of fact. The objections of David Garden and Robert Kendall are subject to the same critique: they both consented to the trustee's requested commission changes explicitly and in writing. Under Pennsylvania law, the general principle is well established that a beneficiary who has consented to an action by a trustee may not subsequently object to that action years later. As early as 1914, the Pennsylvania Supreme Court concluded where a life tenant had notice of trustee commissions upon income in several past accounts and failed to object, she could not subsequently object to that commission. *Neafie's Estate*, 245 Pa. 576, 579, 91 A. 958 (Pa. 1914). Where a trust beneficiary was notified by letter of a proposed reorganization that might affect the value of securities her subsequent objection to an account of that transaction lacked merit. *In re MacFarlane Estate*, 317 Pa. 377, 177 A.12 (Pa. 1935). As the *MacFarlane* court observed: "A competent beneficiary who with full knowledge of the facts and his rights expressly consents to or affirms an investment by the trustee cannot, in the absence of fraud, thereafter question its propriety" since if a beneficiary believes a trustee's action improper, "she was under a duty to speak." *Id.*, 317 Pa. at 383, 177 A. at 15. Likewise, a

son's objection to an account on the basis that the trustees should have required his father to pay rent for residing in the house that had belonged to his deceased wife were denied because, *inter alia*, the objector had long standing knowledge of this family agreement and failed to raise a timely objection. As the court observed, "it is well settled that a competent beneficiary who, with full knowledge of the facts, expressly or by acquiescence consents to or affirms the conduct of the trustee in relation to the trust property, cannot thereafter question the propriety of such conduct." *In re Strawbridge's Estate*, 322 Pa. 406,411, 185 A. 726, 729 (Pa. 1936). In a recent case more directly on point, Judge Paula Ott overruled objections to a trustee account where a remainder beneficiary objected to trustee commissions that had been communicated to and approved by the prior income beneficiary. *Walton Trust*, 23 Fid. Rep. 2d 365 (Chester Cty. O.C. 2003).

PNC presented unrebutted evidence that objector David Garden had consented in writing to both the 1976 trustee commission increase to 6% and the 1989 revision of its commission payments. By letter dated December 9, 1976 Mr. Garden stated that he agreed to the increase in the trustee fee from 4% to 6% with two conditions: he reserved the right to rescind that increase by written notice and he would pay close attention to the performance of the investment portfolios.[30] Similarly, in 1989, Mr. Garden was notified by the trustee that it had been receiving a fee of 6% for the past 12 1/2 years which was above the fee set forth in the 1923 deeds of trust. It then requested his approval for the bank to charge "its scheduled rates in effect from time to time subject to a 30% discount" with the concession that the bank would forego its termination

---

30. 10/21/14 PNC Partial Summary Judgment Motion, Ex. F.

fee when the trusts end. Mr. Garden expressed his approval of this fee arrangement by signing his name — twice — after the word "APPROVED."[31]

Objector Robert Kendall likewise signed this 1989 letter expressing his approval of the new commission schedule. That letter explicitly informed him that the fee of 6% on income was above the fee set forth in the 1923 trust documents,[32] He became a 5% income beneficiary of the trust in 1985 upon the death of his mother Louise Kendall. Louise Kendall, in turn, had explicitly agreed to the 1976 fee increase with the 1976 letter she signed with David Garden. Again, the only conditions to her consent were that she reserved the right to rescind the increase from 4% to 6% by written notice to the trustee and that she would pay close attention to the portfolios' performance.[33] The acquiescence of his mother to the 1976 commission increase would attach to Robert. *See e.g. Wilbur's Estate*, 334 Pa. 45, 72, 5 A.2d 325, 338 (Pa. 1939)(where alleged diversions of trust income occurred long before the exceptant's interest attached," they "were excused by her husband's laches and acquiescence"). *See also Estate of Warden*, 2 A.3d 565, 580 (Pa. Super. 2010)(Beneficiary is bound by the acquiescence of the prior beneficiary if the successor fails to promptly request an accounting based on an affirmative duty to inquire if concerned about the trust's administration). Based on this explicit consent, the objections of David Garden and Robert Kendall to the past trustee commissions are without merit.

Despite their signatures consenting to the 1989 trustee fee commission change, David Garden and Robert Kendall

---

31. 10/21/14 PNC Partial Summary Judgment Motion, Ex. H.
32. 10/21/14 PNC Partial Summary Judgment Motion, Ex. I.
33. 10/21/14 PNC Partial Summary Judgment Motion, Ex. F.

argue broadly that this consent was obtained by "deceit."[34] The "facts" they cite to support this claim of deceit, however, fall dismally short of establishing this claim-especially in light of the relevant case law. David Garden, for instance, asserts that he "understood" that the 1989 change required unanimity similar to the process that had been followed in obtaining consent to the 1976 fee change to 6%. Nowhere in the document he signed, however, was there a unanimity condition. Although the objectors cite to a handwritten memo by a trustee official that everyone's consent was necessary,[35] that note was not part of the beneficiaries' agreement. Robert Kendall likewise asserts that his consent to the 1989 commission change was predicated on a belief that such consent required unanimity. But the document he signed in 1989 contained no such condition. The "beliefs" of Mr. Garden and Kendall do not translate into terms of the agreement. In a different vein, Robert Kendall complains that when his mother died, he was not informed of his right to rescind the 1976 agreement to raise the trustee commission to 6%. But under long-standing Pennsylvania precedent, upon the death of a life tenant, the remainder beneficiary has the right to promptly demand an accounting. Failure to do so can result in acquiescence that bars the beneficiary's claim. *Estate of Warden*, 2 A.3d at 580. More to the point, "Laches is not excused by simply stating: I did not know. If by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, 'but what he *might have known*, by the use of the means of information within his reach, with the vigilance the law requires of him.'" *Id.*, 2 A.3d at 579. In this case, the objectors acknowledge that they allowed 42

---

34. 11/20/14 Robert Kendall objection, memorandum of law at 21.
35. 11/20/14 Robert Kendall objection, Ex. 13 (PNC Bates 5416).

years to elapse before seeking this accounting.[36] Moreover, they concede that after the prior individual trustee died in 1969, no efforts were made to appoint a successor trustee until 2013. In light of this inaction, the objection to the past agreements by prior beneficiaries to changes in the trustee fees are clearly barred by acquiescence.

The objectors invoke *Estate of Smith*, 874 A.2d 131 (Pa. Super. 2005) for the proposition that "the entitlement to trustees' compensation is not a matter of the law of trusts, but of the intent of the parties as evidenced by their contract.... If the instrument creating the trust provides what a trustee's compensation shall be, such provision is binding on all parties concerned."[37] The facts of this case, however, differ significantly from those in the *Estate of Smith*. In *Smith*, the trustee sought a retroactive fee increase for its past services at the time it filed its account. The trustee fees had been set forth in a 1973 will codicil. When the trustee filed its third account in August 1999, it sought "an award of interim compensation from the principal of the trust for past services rendered" which was denied. This request for a retroactive fee increase differs markedly from the facts for both Jones Trusts. Not only did the trustee document its contemporaneous request for a fee increase in 1976 and 1989 from the fees set in the 1923 trust agreements, but the income beneficiaries agreed or acquiesced to those increases without protest until the five objectors filed their objections in November 2013. This long period of acquiescence is particularly relevant to the objections of Elizabeth Kendall and Elaine Kendall.

The objectors emphasize that neither Elizabeth nor

36. 11/20/14 Robert Kendal objection, memorandum of law at 1 & 4.

37. 11/20/14 Robert Kendall objections, memorandum of law at 19.

Elaine responded to the trustee's request in 1989 for their approval of the proposed commission change to the bank's fee schedule minus a 30% discount. They assert that these two beneficiaries lacked full knowledge of their legal rights and "were not informed of the operative provisions of the Trust instruments, the 1976 amendment or the 1989 attempted modifications."[38] They complain, as well, that Elizabeth and Elaine were not informed "that the purported change in 1989 was not adopted by all of the then beneficiaries."[39] These assertions fly in the face of the record. PNC presented three letters that the trustee sent in 1989 to these two beneficiaries which clearly stated that not all of the other beneficiaries had consented to the suggested fee change. In its August 1, 1989 letter, the trustee informed Ms. Kendall that more than 75% of the beneficiaries had approved the fee change. Ex. J. In a subsequent September 7, 1980 letter, it noted that at that point "all the beneficiaries other than you and one other party" had approved the fee change. Ex. K. Finally, in an October 18, 1989 letter, the trustee notified Elaine Kendall that it would implement the commission change based on the approval of 90% of the beneficiaries. It also noted that this fee change would be reflected in the periodic statements sent to the beneficiaries. Ex. L. The objectors presented no evidence whatsoever that either Elaine or Elizabeth objected to this commission change until the November 2013 objections to the PNC account. Although entitled to seek an accounting, they failed to do so.

After this more than two decades of acquiescence to the 1989 change in trustee commission, the objections of Elaine and Elizabeth Kendall are without merit. As Judge Ott observed, "it is well established in Pennsylvania that

---

38. 11/20/14 Robert Kendall objections, memorandum of law at 25.
39. 11/20/14 Robert Kendall objections, memorandum of law at 25.

a beneficiary may acquiesce or consent to a fiduciary's diversion from the settlor's will." *Walton Trust*, 23 Fid. Rep. 2d 365, 369 (Chester Cty. O.C. 2003). Where beneficiaries for years are given facts about the trust accounts and they acquiesce without seeking a formal accounting, as a matter of equity their claims against the trustee are barred by laches or acquiescence. *See, e.g., In re Wilbur's Estate*, 334 Pa. 45, 55, 56, 5 A.2d 325, 331 (Pa. 1939)("not only is the long delay in failing to challenge the trust administration a complete bar" but "we think the conduct of Ray Wilbur and of the exceptant (beneficiaries) is evidence of acquiescence"). *See also In re Walton's Estate*, 348 Pa. 143, 146-47, 34 A.2d 484, 485 (Pa. 1943)(where a beneficiary was aware of the trustee's investment in a mortgage and for years failed to object, his objections to a subsequently filed account were dismissed "having done nothing for several years must be considered to have acquiesced in the investments and administration of the trust estate); *In re MacFarlane's Estate*, 317 Pa. 377, 382, 177 A.13, 15 (Pa. 1935)(claim of surcharge was properly dismissed where beneficiary's conduct amounted to assent to the acquisition and retention of stock).

Finally, the objections of Jean Wade are without merit. Ms. Wade's interest in the trusts date back to 2001 when her mother, Joyce Wade, died. Joyce Wade had explicitly consented to the 1989 commission change when she signed her name after "APPROVED" in response to the trustee's June 12, 1989 letter that informed her of its proposed fee schedule and of the past increase in fees to 6% above the fees originally set in the 1923 trust agreements.[40] Prior to that, Jean Wade's grandmother, Marian Graham, had approved the 1976 fee increase to 6% as evidenced in the December 22, 1976 letter to the trustee written

---

40. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. M.

on her behalf by John R. Graham, under her power of attorney.[41] At no point during the twelve years when Jean Wade acquired her interest in the trusts did she seek an accounting. PNC therefore asserts that Ms. Wade's claim is barred by laches. The doctrine of laches is similar to a statute of limitations: it "may bar a party from seeking equitable relief after the lapse of a certain period, usually six years." *Estate of Warden*, 2 A.3d at 579. It is predicated on a lack of due diligence: "laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another." *Id.* As a general rule if a beneficiary makes a prompt demand for an accounting after his interest vests, his claim would not be barred by the laches or acquiescence of the preceding income beneficiary. Under Pennsylvania law, a beneficiary "believing a trustee's action is improper has an affirmative duty to speak." *Id.*, citing *In re MacFarlane's Estate*, 317 Pa. 377, 382-83, 177 A. 12, 15 (1935). If, however, the beneficiary fails to demand an accounting, his or her claim would be barred by the laches or acquiescence of the preceding life tenant. *Id.* at 580, citing *In re Wilbur's Estate*, 334 Pa. at 55, 5 A.2d at 331. Jean Wade's objections to the past trustee fees are therefore barred by laches due to the acquiescence of herself, her mother and her grandmother.

## Conclusion

For all these reasons, PNC Bank, National Associations Motion for Partial Summary Judgment is granted. The objections to the trustee compensation paid to PNC during the accounting period are overruled. A hearing shall be scheduled for the remaining objections as well as for the petition to remove PNC as trustee.

---

41. 10/21/14 PNC Motion for Partial Summary Judgment, Ex. E.